WILLIAM J. MISENHEIMER et al., Appellants, v. ROBERT AMOS et al.

Division Two, June 8, 1909.

1. **ADVERSE POSSESSION: Cotenants: Notice.** To establish title in one cotenant against another by adverse possession there must be by the one such outward acts of exclusive ownership, of an unequivocal character, as to impart notice to the other that an adverse possession is intended to be asserted against him. But it is not necessary that any positive notice should be given to the other, nor does it devolve upon the possessor to prove a positive actual knowledge by the other; it is sufficient that the act itself is overt and notorious; and even if the other is ignorant of his rights and neglects them, he is bound by such notice.

2. ———: ———: ———: **This Case: Answer in Former Suit.** Defendants and their immediate ancestors had been in actual possession for fifteen years, and that possession was open and notorious; they had paid all the taxes; plaintiff at no time made any claim thereto until, long before this suit was brought, their immediate grantors brought an action in ejectment against defendants' ancestors to which the defendants by their answer set up adverse possession, and in which the then plaintiffs took a nonsuit. *Held*, that, though the defendants in the former suit were minors, defendants have shown an open and notorious notice to plaintiffs of their adverse possession, and the presumption does not lie that their possession was also the possession of plaintiffs, who are cotenants according to the paper title.

Appeal from Cape Girardeau Court of Common Pleas.
—*Hon. John A. Snider,* Judge.

AFFIRMED.

*Wilson Cramer* for appellants.

(1)   The evidence tends to show that Robert W.
Renfroe, who lived about one-quarter of a mile from
the premises, controlled the property and collected
rents; that after his death his widow, Cordelia Ren-
froe, did so until her marriage to Jasper N. Dudley,
and that thereafter he had charge for his wife and
two stepchildren, Early Renfroe and Nora Renfroe,
but the evidence utterly fails to disclose an unfriendly
or adverse holding as against the other cotenants.
(2)   The possession of one tenant in common is pre-
sumptively the possession of all.   Benoist v. Roths-
child, 145 Mo. 399; Stevens v. Martin, 168 Mo. 407.
(3)   To constitute an adverse holding by one tenant in
common against another there must be outward acts
of exclusive ownership of such character as to impart
notice that adverse possession is intended to be as-
serted.   Benoist v. Rothschild, supra.   (4)   Nothing
of the kind appears in the record in the case at bar,
excepting as to the two parcels claimed by Robert
Amos and the one claimed by Annie E. Summerlin,
and the court below erred in holding that plaintiffs
had lost their right to the remainder of the property
by adverse possession.   The evidence shows that, with
the exception of two small lots, the land was unfenced
and unoccupied for many years.

*T. D. Hines* and *Oliver & Oliver* for respondents.

(1)   Respondents contend that under the testi-
mony they have made a perfect case of adverse pos-
session under color of title.   (2)   The bringing of the
ejectment suits by appellants' grantors in 1887 and

again in 1895 are solemn admissions of record that plaintiffs had notice of a denial of cotenancy on the part of the defendants in those suits; and are the most positive evidence that minor respondents' ancestors and grantors were asserting exclusive and hostile ownership in this property at that time. The answer in the ejectment suit was a denial that appellants' grantors had any interest in the property as cotenants. It was an unequivocal assertion of adverse possession. It was a direct and positive notice that the defendants' ancestor, Robert W. Renfroe, was claiming the entire property; it was a denial of Heinrichs' cotenancy with Robert W. Renfroe. The oral testimony of Dudley, of Amos and of Summerlin corroborate the conclusions flowing from the ejectment suits. Their testimony is uncontradicted and unchallenged in this record. The testimony of these three witnesses shows in a clear and positive manner that there was an actual ouster of appellants' grantors by respondents' grantors. That respondents denied the appellants' grantors had any interest in or to any rents or profits flowing from this land. This oral testimony is sufficient in itself to support the judgment. Moreover, the fact that appellants took a deed for this property without paying anything for it, and was only to pay a consideration for it, in event that he won this suit, is a strong circumstance showing a want of good faith in his claim of ownership and in the prosecuting of this appeal. The hostile acts of defendants and their grantors towards the appellants and their grantors bring this case clearly within the rule laid down by this court, to the effect that where one cotenant seeks to acquire the title of another cotenant by adverse possession, there must be such outward acts of exclusive ownership and of such unequivocal character as to impart notice to the other cotenant that an adverse possession is intended to be asserted against him. Warfield v. Lindell, 38 Mo. 582; Benoist

v. Rothschild, 145 Mo. 399; Hawk v. Senseman, 6
S. & R. (Pa.) 21; Grim v. Dyar, 3 Duer (N. Y.) 354;
Zeller's Lessee v. Eckert, 4 How. 289.

GANTT, P. J.—This is an action under section
650, Revised Statutes 1899, to have the title to the
south half of lot one of the southwest quarter of
section 31, township 30, range 12, in Cape Girardeau
county, decreed to the plaintiffs as against the de-
fendants.

The cause was heard at the April term, 1908, and
an opinion rendered in which the judgment of the
court of common pleas was affirmed. The learned
counsel for the appellants felt that this court had mis-
apprehended the facts in the record and a rehearing
was granted. The cause has now been reheard and
submitted upon argument.

The statement of the case by Judge BURGESS on
the former hearing comprises all that is necessary
of the record for a decision of the controverted points
and hence we will avail ourselves of it.

"The petition is in the usual form, alleging that
plaintiffs are the owners of said land, and that the
defendants claim and assert some title or interest
therein adverse to plaintiffs.

"Defendants Conrad Lind, Robert Amos, Fred-
erick Amos and A. E. Summerlin joined in the same
answer, in which they plead the ten-year Statute of
Limitations. The answer then alleges, in substance,
that Robert W. Renfroe, at the time of his death in
1888, and for a long time prior thereto, was the
owner in fee of the premises in suit, and occupied the
same as a homestead, and that plaintiffs and their im-
mediate grantors had done certain acts by which they
are estopped from asserting title. The answer then
proceeds as follows:

" 'For another and further answer to plaintiffs'
petition herein, defendants say that there is a mis-

joinder of parties defendant in this cause which is not disclosed by the petition, in this, that there are several defendants, to-wit, Robert Amos, Frederick Amos, Conrad Lind and A. E. Summerlin, who each own an independent and separate interest in fee in separate tracts of said land, being different portions of the south half of lot one of the southwest quarter of section 31, township 30, range 12, in Cape Girardeau county, State of Missouri; that the said described land is divided up into lots and small tracts of land; that Robert Amos owns a small tract of 1.37 acres of land, being a portion of the said above described land, and that not one of the other defendants has, owns or claims any interest in or title to said 1.37-acre tract so owned and possessed by Amos; that the said defendant, A. E. Summerlin, also owns a small tract or portion of the land described in plaintiffs' petition, and that none of the other defendants has or claims any interest in or title to the tract so owned and possessed by Summerlin; that Conrad Lind also owns a small tract, a portion of the land described in plaintiffs' petition, and that none of the other defendants has or claims any interest in or title to the tract so owned and possessed by Conrad Lind, and so with the other answering defendants; that by reason thereof there is a misjoinder of parties defendant in this cause, and pleading these facts in bar of plaintiffs' right to proceed further in this cause, again pray judgment.'

"The defendants Early Renfroe and Nora Renfroe filed answer, in which they deny all the allegations in the petition.

"The trial resulted in a finding and judgment for defendants, dismissing plaintiffs' petition, and rendering judgment against plaintiffs for costs.

"In due time plaintiffs filed motion for a new trial, which was overruled, and exceptions saved.

Plaintiff then prayed, and was granted, an appeal to this court.

"It appears from the record that the town limits of the town of Allenville extend into the east side of said south half of lot one, and that the several pieces of ground claimed by defendants Robert Amos, Conrad Lind and A. E. Summerlin are small tracts or lots lying within said town limits and in the southeast corner of said south half of lot one.

"It is conceded by plaintiffs that Frederick Amos was inadvertently joined as a defendant.

"Defendants Early Renfroe and Nora Renfroe, heirs at law of Robert W. Renfroe, deceased, claim to own the balance of the land in suit.

"Upon the trial it was admitted: 1. That David Renfroe was the common source of title. 2. That he died about 1860 or 1862, leaving by his first wife, three sons, Thomas A. Renfroe, John W. Renfroe and Joel E. Renfroe, and by his second wife, one son, Robert W. Renfroe. 3. That Thomas A. Renfroe, son of David Renfroe, died intestate, leaving his widow, Medora Renfroe, and two children, Cora B. Renfroe and Thomas A. Renfroe. 4. That Cora B. Renfroe, daughter of Thomas A. Renfroe, married a man by the name of Schulz.

"Plaintiff Meisenheimer showed a regular chain of paper title to the undivided interests in the land in question of Joel E. Renfroe and Thomas A. Renfroe, being one undivided half of the south half of said lot one, and is the owner thereof unless, by reason of the Statute of Limitations, title has become vested in the defendants in this suit, or unless plaintiff and his grantors, by reason of some act of theirs, are estopped from claiming said land or any interest therein.

"Defendants contend that under the evidence they have made a perfect case of adverse possession under color of title, and as proof thereof cite: (a) The petition in ejectment of Charles F. Hinrichs and

Cora Renfroe (plaintiff's immediate grantors) against Robert W. Renfroe, father of Early and Nora Renfroe (minor defendants), to recover possession of the south half of the southwest quarter of said section 31, said suit having been filed November 9, 1887; (b) the answer of Robert W. Renfroe in said cause, claiming ownership of said land, alleging the invalidity of the deed under which Hinrichs claimed to hold said property, and setting up the Statute of Limitations; which answer, defendants claim, was a positive repudiation of the cotenancy.

"The judgment in that case was a voluntary nonsuit, and the proceedings in the case tend to show that the defendant therein, at the time of the institution of the suit on the 9th day of November, 1887, was in the actual possession of said land, claiming it as his own, adversely to all others and especially the plaintiffs in said suit.

"The suit of Charles F. Hinrichs, Medora Renfroe, Cora B. Schulz and —— Schulz, her husband, and Thomas A. Renfroe (plaintiff's immediate grantors) against Henry C. Hinton, L. J. Summerlin and David Humbrey, lessees of Jasper N. Dudley, filed in the court of common pleas of Cape Girardeau county, on March 3, 1895, was for the possession of the same land, and while the abstract does not show what the defense was or that an answer was ever filed, or show what the allegations in the petition were, it will be presumed; as it was an action in ejectment—a possessory action—that the defendants in said suit were in possession of the land at the time of its institution."

I.   As to the small tracts of land claimed by the defendants, Robert Amos, Conrad Lind and A. E. Summerlin, and particularly described in their answers, the plaintiffs now concede in their final argument and brief in this case that they cannot recover

as against those defendants the said several tracts of land, and as to them, of course, the judgment of the court of common pleas must be and is affirmed.

II.   The contest is narrowed down to the title to the undivided one-half of the south half of said lot one of the southwest quarter of section 31, township 30, range 12, which plaintiffs claim as grantees of the heirs of Joel E. and Thomas A. Renfroe.

Plaintiffs undertook to show that they had also acquired the title of Robert W. Renfroe by virtue of a sheriff's deed, but they admit now that the said deed was void and they acquired no title to the undivided one-fourth originally descended to Robert W. Renfroe from his father David Renfroe, and that his heirs, Early Renfroe and Nora Renfroe, are clearly entitled to the said one-fourth of said land as the heirs of their father Robert as against plaintiffs. So far as the disclosures of the record are concerned, the one-fourth interest inherited by John W. Renfroe from his father David was unaffected by the decree of the court of common pleas, as neither he nor his heirs were made parties to the suit and there was no effort made to show that he had ever disposed of the same, or whether he was still alive or not.

The important question then is whether there was sufficient evidence to overcome the presumption that the possession of Robert Renfroe and his heirs was the possession of the other tenants in common and other grantees.

Robert Amos, one of the defendants, testified that he knew Robert Renfroe in his lifetime and that said Robert and his tenants were the only persons in possession of the land between the railroad and the White Water River on the west side of the gravel road; that Robert Renfroe's mother was in posses-

221 Sup—24

sion of this land prior to her death and after Robert's death, his widow, and afterwards her second husband, J. N. Dudley, as guardian of the minor defendants, Early and Nora Renfroe, was in possession of the land and that the five-acre lot owned at one .time by Lind was also held by the same parties for a like period of time.

J. N. Dudley, stepfather of the minor defendants, testified that he had been in possession of the lands between the railroad and the White Water River, west of the gravel road, for eleven years, and that Cordelia Renfroe, his wife and the mother of the minor defendants, was in possession before that time; that he took down one of the houses on this land; that the defendants claim this property in its entirety, and that nobody but the defendants had been in possession of it. This witness also testified that he never recognized any right of plaintiffs' grantors to any of said land, and never paid over to them any part of the rent during the eleven years that he was in possession of this property for the minor defendants.

The evidence also showed that the taxes on this land were paid, off and on, by .Elizabeth Renfroe, and after her death, by Robert W. Renfroe (father of the minor defendants), and then by his widow, Cordelia Renfroe, mother of the minor defendants, the whole covering a period of sixteen years, from 1877 to 1892 inclusive. It does not appear that plaintiffs, or any other person under whom they claim title, ever paid taxes upon this land, or exercised ownership over it.

It is the earnest contention of the plaintiffs that the possession of Robert W. Renfroe and his widow and children was prima-facie the possession of the plaintiffs and their grantors who were the owners of the shares of Joel E. and Thomas A. Renfroe and that the evidence is not sufficient to establish adverse possession by said Robert Renfroe and his heirs as against his said cotenants.

The law is well settled in this State that to establish title in one cotenant against another by adverse possession there must be such outward acts of exclusive ownership, of an unequivocal character, as to impart notice to the cotenant that an adverse possession is intended to be asserted against him. [Warfield v. Lindell, 30 Mo. 282; Benoist v. Rothschild, 145 Mo. 408; Hutson v. Hutson, 139 Mo. l. c. 236.] But while this is true when the act or acts are of such a nature as the law will presume to be noticed by persons of ordinary intelligence in attending to their own affairs and of such an unequivocal character as not to be easily misunderstood, it is not necessary that any positive notice should be given to the cotenant, nor does it devolve upon the possessor to prove a positive actual knowledge on the part of the cotenant. It is sufficient that the act itself is overt, notorious, and if the cotenant is ignorant of his rights and neglects them he must bear the consequences. [Dunlap v. Griffith, 146 Mo. l. c. 294; Whitaker v. Whitaker, 157 Mo. l. c. 353.] Now in view of these settled principles, the testimony of the various witnesses established that there was an actual, open and exclusive possession by the defendants, Amos and Summerlin and Lind, and by Robert Renfroe in his lifetime and by his widow and his children after his death, of these lands, and that possession was open and notorious for more than fifteen years. In addition to that Robert Renfroe and his assignees and heirs paid all the taxes upon this land and the plaintiffs never at any time made any claim thereto until, in 1887, Cora Renfroe and Charles Hinrichs brought an action of ejectment against Robert Renfroe, the grantor of some of the present defendants and the father of the others as the tenant in possession of this land. Plaintiffs now say that the amended answer of Robert Renfroe did not rely upon adverse possession, but solely upon the fact that the plaintiffs in that suit were relying upon a void sher-

iff's deed, but we think the plaintiffs have misapprehended the effect of that testimony, which was that Robert W. Renfroe at that date was in actual possession of this land and holding it adversely to Hinrichs and Cora Renfroe, who was suing as one of the heirs of Thomas A. Renfroe. In that case the plaintiffs asserted the right of possession against the said Robert Renfroe and he denied the same and asserted that at the time he had been occupying and was occupying said land as his homestead for more than ten years before the bringing of that suit. The other ejectment suits brought against Hinton, Summerlin et al., were brought in 1895, in which ouster was laid as of 1890, and the plaintiffs in those cases were driven to a nonsuit. Now when the bringing of these ejectment actions in 1887 and 1895 by the grantors of the plaintiffs and the defenses interposed thereto by Robert Renfroe and his assigns and tenants are considered in connection with the testimony of the witnesses already noted, tending to show an actual ouster of said co-tenants and an adverse possession by Robert Renfroe and those claiming under him, and the payment of the taxes for so many years, the collection and appropriation of the rents, we are still of the opinion that the court of common pleas had ample basis for finding that these acts of Robert Renfroe and those claiming under him, were so open and notorious and of such a character that they imparted notice to the plaintiffs, and those under whom they claimed, of the adverse possession and claim of title by the defendants and those under whom they claim. On this claim of adverse possession the testimony of Dudley was clear and positive, that he, as the stepfather of these minor defendants, had been in actual possession of the lands between the railroad and the White Water River, west of the gravel road, for eleven years. And that he had taken down one of the houses on this land, and that he had at all

times claimed this property in its entirety and nobody had been in possession but himself for these children. We think the evidence in this case fully brings it within the requirements of our decisions and establishes a possession in these defendants, which was utterly inconsistent with the presumption that their possession was the possession of the plaintiffs also. After a careful reconsideration of all the evidence in the case, we are still of the opinion which we reached on the first argument of the case here, that the judgment of the court of common pleas should be and it is affirmed.

*Burgess* and *Fox, JJ.,* concur.