CAROLINE J. PEPER, Appellant, v. ST. LOUIS UNION TRUST COMPANY, Trustee Under Will of ADOLPHUS S. PEPER; MADELINE PEPER et al.; and MERCANTILE TRUST COMPANY and NICHOLAS M. BELL, Trustees Under Will of MARGARET P. BELL.

### In Banc, March 15, 1920.

1. **LIMITATIONS: Cotenants: Notice of Adverse Claim.** The institution of suit against the other descendants of an intestate decedent, by one of his children, in possession, to quiet title in her, is notice to them that an adverse possession is intended to be asserted against them.

2. ———: **Arresting Running of Statute: No Action by Defendants Within Ten Years After Suit Brought.** Decedent had built a

Peper v. Union Trust Co.

house and placed his daughter, the plaintiff, in possession, and she alleges it was a gift to her. He died intestate in 1903, and on January 27, 1904, she, being in possession, instituted suit against his other heirs, to have the title determined under the statute (Sec. 650, R. S. 1899); and on February 25, 1916, she filed her fourth amended petition, in which she averred that the property was given to her by her father, and that prior to his death she occupied the same and has since held the sole and exclusive possession thereof, "claiming the same as the owner and adverse to all persons whomsoever." To this petition defendants filed their answer in which they each claim an interest in the property adverse to the claim of plaintiff, ask the court to determine the title, charge plaintiff with rents and decree partition; and their first answer, filed June 5, 1907, was to the same effect. *Held,* that, under Section 1879, Revised Statutes 1909, which provides that "no action for the recovery of lands or of the possession thereof shall be commenced or maintained, unless it appear that the plaintiff or other person under whom plaintiff claims was seized or possessed within ten years before the commencement of said action," defendants are barred and plaintiff has title by limitations, unless, within ten years after plaintiff entered into possession, defendants arrested the running of the statute by the filing of their answers, for plaintiff's first petition, in which she asserted sole ownership, imparted notice to them, as cotenants with her, that she claimed adversely to them; and all of defendants' answers or cross-bills being statutory actions to determine title, for rent and for partition, none of them had for their object the recovery of the premises, and none of them operated to arrest the running of the statute, and therefore plaintiff has the title by limitations. (GOODE, GRAVES and WOODSON, JJ., dissenting.)

3. ———: ———: ———: **By Demand for Rents.** A demand for rents set up in the answer to plaintiff's petition to determine title and asserting adverse possession, does not state an action for the recovery of the premises.

4. ———: ———: ———: **By Action to Quiet Title.** That portion of an answer or cross-bill which asks that the court ascertain and determine the title under the statute cannot be considered an action to recover land, such as is contemplated by Section 1879, Revised Statutes 1909, which says that no action to recover land or the possession thereof shall be commenced or maintained, unless it appear that plaintiff or other person under whom he claims was seized or possessed within ten years. The ten-year Statute of Limitations has no application to the bringing of a mere statutory action to determine title.

5. ————: ————: ————: **By Demand for Partition.** A suit in partition is not an action for the recovery of land, under the ten-year Statute of Limitations (Sec. 1879, R. S. 1909); and a count praying for a decree of partition, in a cross-bill in a suit to determine title, which in no wise asserts a possessory right of the defendants, cannot be considered an action to recover the land or its possession.

6. ————: ————: ————: **By Count in Ejectment.** By a separate count in ejectment in their answer or cross-bill to plaintiff's petition to determine title, or by any other sufficient allegations of facts for affirmative relief, in which they plead ouster, assert their right to possession and pray that they be restored to possession, made within ten years, defendants can arrest the running of the ten-year Statute of Limitations (Sec. 1879, R. S. 1909): but if no such possessory right is asserted in the answer or cross-bill, and it contains no denial of plaintiff's allegation, in her amended petition, of adverse and sole possession and claim of ownership for ten years, including the years which have expired since her suit was instituted, and the facts establish such possession in her, the running of the statute against defendants is not arrested.

7. ————: **Adverse Possession: Creates Title.** Adverse possession, accompanied by the well-known prerequisites, for the statutory period, not only bars any action for recovery, but operates to vest the full legal title in the possessor.

8. ————: ————: **Consistent With Action to Determine Title.** An action to determine title is not only not inconsistent with, but is entirely consistent with, plaintiff's adverse possession.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave*, Judge.

REVERSED AND REMANDED (*with directions*).

*Jones, Hocker, Sullivan & Angert* for appellant; *James C. Jones, Jr.*, of counsel.

(1) The contract between the plaintiff and her father for the conveyance of this property to her was supported by an adequate consideration. Rumbold v. Parr, 51 Mo. 598; Gupton v. Gupton, 47 Mo. 37; Halsa v. Halsa, 8 Mo. 303; Sutton v. Hayden, 62 Mo. 101; Underwood Typewriter Co. v. Century Realty Co., 220 Mo.

530; Williams v. Jensen, 75 Mo. 685; Brannock v. Magoon, 141 Mo. App. 320; Welch v. Whelpy, 62 Mich. 15; Lamb v. Henman, 46 Mich. 112; Soper v. Galloway, 129 Iowa, 145, 105 N. W. 399; Brown v. Sutton, 129 U. S. 238. The contract relied upon has been executed and the insufficiency or inadequacy of the consideration is no defense to a right or interest claimed under an executed contract. Sooey v. Winter, 188 Mo. App. 156; Harrison v. Town, 17 Mo. 243; In re Lamb, 117 N. W. (Iowa) 1118; Oregon Ry. v. Forrest, 28 N. E. (N. Y.) 137; Thomas v. South Haven Ry., 138 Mich. 50; Matt v. Johnson, 55 So. (Ala.) 528; Campbell v. McLaughlin, 205 S. W. 22. (2) Possession of property taken under a verbal contract takes said contract without the operation of the Statute of Frauds. Dickerson v. Chrisman, 28 Mo. 134; Ross v. Alyea, 197 S. W. 268; White v. Ingram, 110 Mo. 474; Brown v. Sutton, 129 U. S. 238; Neale v. Neale, 9 Wall. 1; Marphet v. Jones, 1 Swanst. 172; Clerk v. Wright, 1 Atk. 12; Pain v. Coombs, 1 De G. & J. 34; Wilson v. West Hanpool Ry. Co., 2 De G. & S. 475; Vugley v. Vugley, L. R. 4 Ch. Div. 73, affirmed L. R. 5 Ch. Div. 890; Blockney v. Ferguson, 8 Ark. 272; Arnold v. Stephenson, 79 Ind. 126; Fellon v. Smith, 84 Ind. 485; Robinson v. Throckill, 110 Ind. 117; Edwards v. Fry, 9 Kan. 417; Green v. Richards, 23 N. J. Eq. 32; Coggswell, etc. Co. v. Coggswell, 40 Atl. 213; Calauchini v. Brausleiter, 84 Cal. 249; Eaton v. Whitaker, 18 Conn. 222, 44 Am. Dec. 586; Cooney v. Timmons, 16 S. C. 378; Browne on Statute of Frauds (5 Ed.), secs. 467, 487. (3) Continuous and adverse possession for a period of over ten years of the property in suit vested in plaintiff the legal title thereto in fee simple. Eckey v. Inge, 87 Mo. 495; Merchants' Bank v. Evans, 51 Mo. 347; Kirten v. Bull, 168 Mo. 633; Ridgeway v. Holliday, 59 Mo. 453; Sconnell v. American Soda Fountain Co., 161 Mo. 606.

*Leahy & Saunders* for respondents.

(1) There is no evidence under the issues presented by the pleadings to support a decree in favor of plaintiff. Plaintiff's attitude under her amended petition is that of a purchaser for value, and a decree in her favor upon the theory of a gift would necessarily have been outside of the issues of the case and consequently void. Christian v. Ins. Co., 143 Mo. 461; McNair v. Biddle, 8 Mo. 257; 3 Ency. Pl. & Pr. 357; Story's Eq. Pl. sec. 257; Flewellen v. Crane, 58 Ala. 627; Marsh v. Mitchell, 26 N. J. Eq. 497. (2) The Statute of Frauds (R. S. 1909, sec. 2781) provides that all estates in lands made or created by parol, and not put in writing and signed by the parties so making or creating the same, shall have the force and effect of leases or estates at will only, and shall not, either in law or in equity, be deemed or taken to have any other or greater force. Delventhal v. Jones, 53 Mo. 460. Notwithstanding the letter of the statute, courts of equity will still enforce a parol gift or sale of real estate, where it appears that a refusal to do so would, by reason of the acts of the donee or vendee, as the case may be, upon the faith of such gift or sale, operate as a fraud upon such party (Rosenwald v. Middlebrook, 188 Mo. 58). (3) The great weight of authorities, however, is to the effect that delivery of possession alone is not sufficient, but that the donee must further show that, acting upon the faith of the gift, he has in some way changed his position to a substantial detriment so that a refusal to consummate the gift would be a pecuniary loss to him and an act of injustice. Beach on Contracts, sec. 701: Pomeroy on Contract (Spec. Perf), secs. 130-1; Brown on Stat. Frauds, secs. 467, 491a: Thornton on Gifts, secs. 371-2, 378-9; Waterman on Spec. Perf. sec. 271: 20 Cyc. 1200; 14 Am. & Eng. Ency. Law, 1041; Caldwell v. Williams, 1 Bailey's Equity (S. C.) 175; Logue v. Langan, 81 C. C. A. 271; Allison v. Burns, 107 Pa. St. 50; Seavey v. Drake, 62 N. H. 395; Wiley v. Charlton, 43

Neb. 840; Neale v. Neale, 9 Wal. 1; Bevington v. Bevington, 110 N. W. (Ia.) 840; Harrison v. Harrison, 36 W. Va. 556; Beall v. Clark, 71 Ga. 818. If the improvements are slight or trivial, not equal to the rental value of the property, no equity is raised in favor of donee. Thornton on Gifts, secs. 378-9; Wack v. Sarber, 2 Whar. (Pa.) 387; Hutchinson v. Chandler, 104 S. W. 434; Thompson v. Ray, 92 Ga. 285; Price v. Lloyd, 86 Pac. 767; Cook v. Erwin, 133 S. W. 897; Sitton v. Shipp, 65 Mo. 297; Brownlee v. Fenwick, 103 Mo. 420, 428; Goodman v. Cowley, 161 Mo. 657, 663; Goodin v. Goodin, 172 Mo. 48; Forester v. Sullivan, 231 Mo. 373; Elzman v. Elzman, 253 Mo. 175; Rodgers v. Wolff, 104 Mo. 9; Emmel v. Hayes, 102 Mo. 194; Hubbard v. Hubbard, 140 Mo. 303; Manning v. Berry, 142 Iowa, 47. (4) Plaintiff has not acquired the legal title in fee simple to the property by adverse possession. This action was instituted January 27, 1904, and on June 5, 1907, an answer and cross bill was filed on behalf of all defendants, which answer and cross-bill is similar in its nature to the various answers and cross-bills in the present case. That the Statute of Limitations must be affirmatively pleaded is elementary. Rozier v. Griffith, 31 Mo. 171; Real Est. Sav. Inst. v. Colonius, 63 Mo. 290; Woodsworth v. Tanner, 94 Mo. 124; Paris v. Haly, 61 Mo. 453; Holloway v. Holloway, 97 Mo. 628; James v. Gropp, 157 Mo. 420; Barnard v. Keithley, 230 Mo. 223. In all these cases, the principle upon which the court acts is that, when a court of chancery has jurisdiction of the subject-matter and of the parties, it will, in order to prevent multiplicity of suits and circuity of action, administer full and complete relief in the premises. Snyder v. Arn, 187 Mo. 165. The prayer for partition in the cross-bills certainly challenged the adverse claims of plaintiff and, in effect, asserted that the defendants and plaintiff owned the property in question as cotenants, which necessarily negatived the idea that plaintiff was the sole owner of the property. Was not this sufficient to stop the running of the statute? Furthermore, as a practical question, we should

like to inquire what the defendants ought to have done in this case to stop the running of the statute? They could not ingraft upon the partition statute any peculiar form of action, or change its provisions. Should they have filed a suit for ejectment in order to protect their interests? If so, how could the suit have been maintained when it was admitted that plaintiff was a cotenant and entitled to a share of the property? Should she have been enjoined from prosecuting this suit? Should the court have been asked in the cross-bill to place the defendants bodily in possession of the home and permit them to share it with plaintiff? 2 Wood (4 Ed.), p. 1196, sec. 253a (I); 25 Cyc. 1278, par. H; Norton v. Reed, 253 Mo. 236; Estes v. Nell, 140 Mo. 650; Snell v. Harrison, 131 Mo. 500.

WILLIAMS, J.—This is a suit to determine the title to a parcel of ground with a dwelling house situated thereon known as No. 4448 Washington Boulevard, St. Louis, Missouri. The suit was commenced in the Circuit Court of the City of St. Louis, on January 27, 1904. This is a second appeal in this case. The first appeal was reported in 241 Mo. 261, but none of the points involved in the present appeal were involved in the first appeal. On February 25, 1916, plaintiff filed her fourth amended petition herein upon which the case was tried below. The petition in substance alleges:

First. That she is the owner in equity of the land described in petition; that one Christian Peper in his lifetime had the legal title to said premises, subject to plaintiff's equitable right to set up in the petition; that he died on the —— day of September, 1903, leaving as his children and sole heirs at the law this plaintiff, and Adolphus S. Peper, Charles G. Peper, Margaret P. Bell and Frederick C. Peper; that he left a will and testament which were duly probated; that the will contained no specific devise of the property now in controversy, but named the above children and Christian Cornelius, otherwise known as Christian Peper, Jr., as residuary dev-

isees and legatees under his will, and that they thereupon succeeded to the legal title to said premises, subject to plaintiff's equitable claim. That Frederick C. Peper and Christian Peper, Jr., afterwards conveyed their right, title and interest in and to said property to the plaintiff. The answer further alleges the death of some of the children since this suit was instituted and sets forth the names of their respective heirs etc. (all of whom were made defendants herein).

Second. That prior to October, 1898, said Christian Peper promised to buy for plaintiff a lot of ground and to build a residence thereupon and to convey the same to this plaintiff. The petition then alleges the following:

"Plaintiff states that when the said Christian Peper promised, as aforesaid, to purchase for this plaintiff a lot in the City of St. Louis and to build a residence thereon and give said property to the plaintiff, he stated to the plaintiff that if she would select and assist in the selection of a lot in the City of St. Louis for that purpose and would supervise and assist in the supervision of plans and specifications for a dwelling house to be erected thereon, and superintend and assist in the superintendence of the erection of such a dwelling house thereon, and with her family move into said house, when erected, he, the said Christian Peper, would purchase said lot so selected and cause to be erected thereon a house suitable for the plaintiff and her family, and convey the same to the plaintiff, and the plaintiff avers that she agreed to select and assist in the selection of such a lot in the City of St. Louis, supervise and assist in the supervision of the plans and specifications for a dwelling house thereon, superintend and assist in the superintendence of the construction of such a residence, and that when the same was completed, she would move into the same with her family; and the plaintiff alleges that she accordingly selected and assisted in the selection of a suitable lot, which, when so selected by her, was purchased by the said Christian Peper, supervised and assisted in the supervision of the plans and specifications for a residence

thereon; superintended and assisted in the superintend-
ence of the construction of the house on said lot, which
the said Christian Peper, caused to be erected theron, as
he had agreed to do, and, upon the completion thereof,
moved into the same with her family, *and has ever since
resided therein and has held the sole and exclusive pos-
session of the premises above described, claiming the
same as owner and adverse to all person whatsoever.*"
(Italics ours.)

Third. That the defendants claim an interest in
said premises adverse to the title of plaintiff.

The prayer of the petition is that the court adjudge
and determine the title of the respective parties in and
to said property.

The defendants filed separate answers to the above
petition. All of the separate answers contained allega-
tions in substance as follows:

Admit that Christian Peper in his lifetime held a
legal title to said property; admit the death of said
Peper on September 26, 1903, and the names of the re-
spective heirs as alleged in plaintiffs petition; also ad-
mit that Christian Peper left a will which was duly pro-
bated and that persons named in plaintiff's petition were
also named as residuary devisees and legatees under said
will; also admit that they each claim an interest in the
premises adverse to the claim of the petitioner.

The answers further allege that plaintiff has occu-
pied the premises since the death of Christian Peper as
her residence and that the rental value for the same is
$125 per month, and that no part of the same has been
paid except the first, second and third months following
the death of Christian Peper.

The answers pray that the court ascertain, deter-
mine and adjudge the title and interest of the respective
parties in said real estate, and ask judgment against the
plaintiff for rent for use and occupation of said premises
since the death of said Christian Peper.

Others of the defendants in their separate answers
allege that if there was such an agreement as is pleaded

by plaintiff in her petition the same was not in writing and therefore void under the Statute of Frauds, and some of the separate answers by way of cross-bill ask to have the property partitioned, alleging the interest of the different parties therein as originally arising under the will of Christian Peper, and allege that the property could not be divided in kind and ask that the same be sold and the proceeds thereof distributed according to the respective interests.

By way of reply the plaintiff alleged that in October, 1900, she entered into the actual possession of the premises described in the petition, and has since that time remained in the sole, exclusive, adverse, open and notorious possession of said premises, claiming title thereto in fee; and that by reason thereof the rights of defendants in said premises are barred by the Statute of Limitations.

The evidence upon the part of plaintiff was substantially as follows:

Christian P. Bushman, son of plaintiff, testified as follows:

"My grandfather [Christian Peper] told mother [plaintiff herein] if she would pick out a lot in a location she would live and be satisfied in he would by it and build a house for her and give it to her.  .  .  .  Grandfather told mother she would have to get the plans and all.  .  .  .  She said she would."

This witness further testified that his mother spent considerable time in looking for a lot, finally selected the one in question, and that Christian Peper purchased the same, paying $8250, and took the deed in his own name.  The deed was dated September 29, 1898.  That his grandfather then told an architect he was going to build a house for his daughter and that the architect should consult her about the plans; that his mother made suggestions to the architect as to the plans for the house; that the house cost about thirty-five thousand dollars; that his mother moved into the house in October, 1900, and has had possession of the property ever since.

It further appears from the evidence that during the times above mentioned plaintiff and her husband were not living together and afterwards in 1902 were divorced.

This witness testified that his grandfather told him that he had offered the deed for the property to the plaintiff, but that she would not take it because she was afraid her husband would come back and insist on living with her.

Upon the cross-examination this witness admitted that while this suit was pending he had written a letter to one of the defendants asking for a loan of five hundred dollars in which he said, referring to this suit: "So senc me that check or I will not know anything."

Estelle Peper Bushman, daughter of the plaintiff, testified that her mother had occupied the house since October, 1900. This witness further testified as follows:

"He [Christian Peper] told her [plaintiff] if she would select a lot he would put up a house for her and give it to her, and he told her if she wanted to he would buy a house instead of building one; if she found the house already built he would buy that for her." That her mother looked several times for a lot and finally selected the one in question, because it was located at a place which would make it convenient for her grandfather to come there every day for lunch. That her grandfather told plaintiff that he would send an architect out and she could direct him as to the plans; that the plaintiff watched the daily construction of the house, suggesting changes to be made therein; that her grandfather was in the habit of taking lunch with plaintiff and remaining until about two p. m., and later when he became less active in business would sometimes remain until five p. m.; that a short time after the house was completed her grandfather was visiting the family and plaintiff made some complaint about the house having too many windows, and that her grandfather said plaintiff could sell the house and do whatever she wanted to with the proceeds.

Clarence Peper, another son of plaintiff, testified as follows:

"My grandfather said: 'Carrie [plaintiff], you ought to take that deed,' [they were discussing the deed to the house]. My mother said there was no rush about it and mentioned something about a divorce."

The testimony of several witnesses upon a former trial was read in evidence. That of a Mrs. Doll, a neighborhood friend of the family, to the effect that Christian Peper told her that he thought he would make an end to his daughter moving around, so he bought this lot and built the house and told the daughter that he would build it for her and make her a present of it and that he gave it to the plaintiff because she had nobody "to do for her."

James F. Ballard, who lives adjoining this property, testified that Mr. Peper told him that he built the house and had given it to his daughter (the plaintiff), and that he had also offered to build a house for his other daughter, Mrs. Bell, but that she did not like the location.

Adrain Bassett, the man who did the plumbing work on the house, testified that Christian Peper told him that he wanted a good job, that he was building the house for his daughter and intended to give it to her.

Henry S. Benecke, the man who did the carpenter work on the house, testified that Christian Peper told him he was building the house for the plaintiff. This witness saw the plaintiff at the house several times while it was being constructed and consulted with her about some changes.

William W. Portman, a real estate dealer, testified that Christian Peper told him that he was building this house for plaintiff and referred to it as "Carrie's House."

Harry S. Clymer, chief draughtsman for the architect who planned the house, testified that Christian Peper told him that the house was intended for the plaintiff and that he also intended to build one for Mrs. Bell.

Mrs. Klippel, a friend of the family, testified that Christian Peper told her that he was going to complete the house of "Carrie" and then he was going to look for a lot for his other daughter, Mrs. Bell.

Mrs. Chivington, a seamstress, testified she had done sewing for both Mr. Christian Peper's daughters and knew him during the last ten years of his life and was often at his home and at the home of plaintiff. That she heard Mr. Peper say on one occasion: "Now, Carrie, there is the plan of your new house." She on another occasion heard Mr. Peper say he was building a house for "Carrie," because she had trouble with her husband, and that she heard him ask the plaintiff to go with him to get the deed to the house, but that plaintiff refused, because she had not yet gotten her divorce. During Mr. Peper's last illness he stated to the witness· "Wasn't it too bad that Carrie did not go with me that day to get the deed?" and further said: "Never mind. just as soon as I am well I will give her the deed, and then there can be no dispute as to the ownership of that house." Mr. Peper died within two weeks after making this statement.

Dayton M. Numbers, an acquaintance of Christian Peper, testified that Mr. Peper said that he was going to build this house for plaintiff and give it to her, so that she could have a home of her own, and that after the house was built Christian Peper said: "Carrie's house is finished. You can get a good look at it." And that he further said that he intended to take lunch with "Carrie" and that the house was "as convenient for her as for me: so both of us are satisfied."

Jacob Weisling testified that while he was giving Christian Peper a massage treatment during the time the house was being built he was told by Mr. Peper that he was building the house for his daughter "Carrie," "because she was taking care of him."

Mrs. Carrie Miller Peper (sister-in-law of plaintiff), widow of Charles G. Peper, deceased, testified that Christian Peper was rather feeble physically during the last

year of his life; that in 1903 while she was at Christian Peper's home she was telling him about making some purchase down town and at that time Mr. Peper said: "That reminds me; I must have the deed drawn and give it to Carrie for the house." This witness, as the sole devisee under the will of Chas. G. Peper, deceased (one of the residuary devisees in the will of Christian Peper), conveyed all her right, title and interest in this property to plaintiff.

Deeds from Fred C. Peper and Cornelius C. Peper and wife conveying to plaintiff all their interest in this property were also introduced.

Plaintiff's daughter was recalled and testified that her grandfather during his lifetime supported her mother and that after his death her mother had paid the taxes on the property and had refused to pay rent on the property. She further said that none of the other children denied that the house belonged to her mother except Mr. and Mrs. Bell, and that they did not deny it until after her grandfather's death.

Upon the part of the defendants the evidence was substantially as follows:

Nicholas M. Bell testified that in 1889 he married Maggie Peper, the daughter of Christian Peper, and afterwards (with the exception of the first nine months) lived at the Peper home until Mr. Peper died; that one day at the Peper home the plaintiff and witness's wife asked him to talk to Mr. Peper about making plaintiff a deed to the property now in controversy. The witness went to see Mr. Peper in that regard.

At another time at the Peper home one of Peper's sons asked the father if he was going to deed this property to the plaintiff and Mr. Peper said that he was not, but that it was his house, and that the house "had cost more money than he had expected—they had taken advantage of him in his affliction and had spent more money there than they had a right to spend." At another time this witness heard his wife say, "Papa, ain't you going to give Carrie that house on Washington Avenue?" Mr.

Peper replied: "No, that is my house. They have taken advantage of me in my illness and expended more money than they had a right to do."

This witness testified that the Pepers estate was worth about four million dollars, and that Mr. Peper was feeble physically during the last year of his life; that at the time of the trial the plaintiff was the only surviving child of Captain Peper.

Defendants also offered evidence tending to show that Fred C. Peper, after the death of Christian Peper, paid $120 per month rent on this place from August. 1903, to April, 1904. This witness testified that the rental value of said premises during the first five years of plaintiff's occupancy was $1500 to $1800 a year; during the next five years it was $1500 per year, and $1200 per year during the remainder of the time.

In rebuttal plaintiff offered evidence tending to show that Fred Peper had paid the rent for a few months after his father's death to keep peace in the family, and that Mr. and Mrs. Bell were the only ones who wanted rent The plaintiff objected to her brother paying the rent. stating that she thought it might hurt her case, and he did not pay further rent.

Dayton M. Numbers, testifying in rebuttal, said that he had a conversation with Christian Peper a few months before his death, and that Mr. Peper said that he was ready to give "Carrie" a deed for the property, but that Nick (meaning Mr. Bell) advised him not to do so while the divorce was pending, and that Mr. Peper said he was going to "let it lay until that got through." This witness first said this was two or three months before Peper's death, but upon cross-examination he said it was during the time the divorce suit was pending.

The parties stipulated that plaintiff, during her occupancy of the premises in controversy, had expended as payment for taxes and repairs the sum of $4051.72.

The court rendered judgment, dismissing plaintiff's bill, and ordered the land to be partitioned; ordered the same sold and that the proceeds be divided according to

the respective interests of the parties. The court also entered judgment against plaintiff for that portion of the rent which would fall to the interest represented by defendants. Plaintiff duly appealed.

I. The appellant contends that the court erred in refusing to hold that plaintiff was the sole owner of the land in controversy. In support of this contention it is insisted in substance that plaintiff's source of title is two-fold, viz.:

1. That by reason of the full performance by appellant of the alleged contract between herself and her father she became vested with the equitable title to said land.

2. That by reason of being in the adverse possession of said property for more than ten years she is now the legal owner of said property.

If appellant's claim of title under either of the above theories is sound the judgment below was erroneous.

We will first discuss the claim to title based upon the theory of ten years of adverse possession.

II. That appellant has been in the actual, open, hostile, exclusive, adverse and continuous possession of said real estate claiming to own the same since, at least, from the date of the original institution of this suit, to-wit, from January 27, 1904, until January 29, 1917, the date of the trial below, is we think conclusively established by the record.

If the defendants had any doubt as to the nature of appellant's possession prior thereto, all doubt must have been dispelled when on January 27, 1904, appellant, then in possession, instituted this suit to determine the title under the provisions of Section 650, Revised Statutes 1899, and asserted her claim to the entire title.

Even if defendants' theory be correct that the appellant and defendants then owned the land as tenants in common, such conduct upon the part of appellant then in actual possession amounted to an ouster of the other

37—281 Mo.

cotenants and was certainly sufficient to impart notice to them that an adverse possession was intended to be asserted against them. [Seibert v. Hope, 221 Mo. 630, l. c. 635; Misenheimer v. Amos, 221 Mo. 362, l. c. 371.]

If then nothing transpired to arrest the running of the ten-year Statute of Limitations her legal title by adverse possession ripened long prior to February 25, 1916, the date of the filing of the fourth amended petition herein (being the petition upon which the trial was had).

Did anything transpire to arrest the running of the ten-year Statute of Limitations? This is the rather difficult question now for determination.

Said Statute (Sec. 1879, R. S. 1909) provides as follows:

"No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person . . . unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action."

It becomes at once apparent that if defendants or those under whom they claim have arrested the operation of said statute in the instant case it must have been accomplished by the bringing of some action within the ten-year period therein specified *to recover said land or the possession thereof.*

It was of course not necessary that defendant should have instituted a separate and independent suit to recover said land or the possession thereof, but any proper plea to that effect in the answer by way of cross-bill would have been sufficient.

Defendants contend that the allegations of the joint answer filed in this case on June 5, 1907, was sufficient to arrest the running of the above statute. Said answer (caption and signature omitted) was as follows:

"Now come defendants in the above entitled cause by leave of court, and for answer to the amended peti-

tion herein, admit that defendants Charles G. Peper and Adolphus S. Peper are sons of Christian Peper, deceased; that defendant, Margaret P. Bell, is the daughter of said Christian Peper, deceased; that defendant, Nicholas M. Bell, is her husband; that defendant, Caroline M. Peper, is the wife of defendant Charles G. Peper; that defendants Adolphus S. Peper, Charles G. Peper and Margaret P. Bell claim an interest in the real estate described in plaintiff's amended petition, as devisees under the will of said Christian Peper, deceased; that defendant, Caroline M. Peper claims an interest therein as the wife of defendant Charles G. Peper; that defendant Nicholas M. Bell claims an interest therein as husband of Margaret P. Bell; that one Frederick C. Peper is a son of said Christian Peper, deceased, and a beneficiary under his will; that one Christian Cornelius, otherwise known as Christian Peper, Jr., is a beneficiary under the will of said Christian Peper, deceased; that Caroline B. Peper is the wife of said Christian Cornelius, otherwise known as Christian Peper, Jr.; that said Frederick C. Peper, Christian Cornelius, otherwise known as Christian Peper, Jr., and Caroline B. Peper, his wife, claim no interest or estate in said property, and defendants deny each and every other allegation in said amended petition contained.

"Further answering, defendants say that if it be true (which defendants deny) that said Christian Peper, deceased, during his lifetime, made the promise and agreement with plaintiff concerning said real estate as set forth in plaintiff's amended petition, such promises and agreement were not in writing and therefore are within the Statue of Frauds and consequently void.

"Further answering, and by way of cross-bill, defendants state that the aforesaid Christian Peper, who died September 26, 1903, was the owner at the time of his death of the real estate described in plaintiff's amended petition, consisting of a house and lot, of the value of about thirty-five thousand dollars, located on Washington Avenue in the City of St. Louis, and known as 4448 .

that upon the death of said Christian Peper he left a will which was duly admitted to probate in the Probate Court of the City of St. Louis, whereby he devised five-sixtieths of all his real estate, including said parcel of ground described in plaintiff's amended petition, to one Christian Cornelius, otherwise known as Christian Peper, Jr., and eleven-sixtieths of all his real estate, including said parcel of ground described in plaintiff's amended petition, to each one of his children, to-wit, Adolphus S. Peper, Charles G. Peper, Margaret P. Bell, defendants herein, and Frederick C. Peper; that ever since the death of said Christian Peper, to-wit, September 26, 1903, plaintiff has occupied the premises in question as her residence, and that the rental value of the same is one hundred and twenty-five dollars per month, and that no part of the same has been paid except for the first, second and third months following the death of said Christian Peper; that shortly after the death of said Christian Peper, said Frederick C. Peper and Christian Cornelius, otherwise known as Christian Peper, Jr., together with his wife, for a valuable consideration, conveyed to plaintiff all their right, title and interest in and to said parcel of ground described in plaintiff's amended petition; that by virtue of said conveyances, plaintiff, in addition to the interest devised to her under her father's will, became and is the owner of an undivided twenty-seven sixtieths of said parcel of ground described in her amended petition, and defendants Adolphus S. Peper, Charles G. Peper and Margaret P. Bell are each owners of an undivided eleven-sixtieths of said parcel of ground, defendant Nicholas M. Bell having a right of curtesy in his wife's share therein, and defendant Caroline M. Peper having a dower interest in her husband's share therein.

"Said defendants therefore ask this court to ascertain and determine the estate, title and interest of said parties respectively in said real estate, and to define and adjudge the title, estate and interest of the parties severally in and to said real property as above set forth.

''Said defendants further ask that this court, having declared and adjudged that plaintiff and defendants Adolphus S. Peper, Charles G. Peper and Margaret P. Bell are tenants in common of said real estate, and declared the interest of the parties accordingly, will order and decree a partition thereof. Defendants state that owing to the character of the property, and the number of owners, a partition in kind is impracticable, and they therefore ask that this court will order a sale of the property at public vendue for cash in accordance with the statute in such cases made and provided, and that the proceeds of such sale be divided between plaintiff and said defendants according to their respective interests, after the taking from plaintiff's share such sum as the court may ascertain to be due from her by way of rent for the use and occupation of said premises; and for such other relief as may be just and proper, defendants will ever pray.''

It is somewhat difficult to designate the above cross-bill by any name. It appears that a statutory action to determine title, an action for rent, and an action for partition are all joined in one count of the cross-bill. But however that may be, can any portion of said cross-bill be said to state a cause of action which has for its object the recovery of the land here in suit, or the possession of the same?

That portion which seeks a recovery of rent certainly does not state such an action. Neither can that portion of the cross-bill which amounts to nothing more than a statutory action at law to determine title under Section 2535, Revised Statutes 1909, be considered an action to recover land as contemplated in said Section 1879, supra.

In fact it has been recently held by both divisions of this court that the ten-year Statute of Limitations (Sec. 1879, supra) has no application to bringing of a mere statutory action to determine title. [Armor v. Frey, 253 Mo. 447, l. c. 474, et seq.; Powell v. Powell, 267 Mo. 117, l. c. 129.]

The remaining portion of the cross-bill pleads an action in partition, but the cross-bill in nowise seeks to assert any possessory right of the defendants to said land. It has been held that a suit in partition is not an action for the recovery of lands under Section 1879, supra. [Real Estate Co. v. Lindell, 133 Mo. 386, l. c. 399.]

Whether or not, where partition is asked in a suit in equity, the party so asking, being out of possession, may by proper plea for affirmative relief assert his possessory rights and ask that the court award a writ of possession in connection with the equitable partition, and whether such a plea if made in time would stop the running of the statute, we need not here determine, for the simple reason that no such attempt was made by defendants in the present action.

Had defendants by separate count in ejectment, or by otherwise sufficient allegation of facts in the answer for affirmative relief, pleaded the ouster, asserted their rights to possession of their respective interest in said land and prayed that they be restored to said possession, we would not hesitate to say that such a pleading, made within the ten-year period, would have arrested the running of the statute. But no such right was asserted or asked for in the pleadings filed.

Under such conditions we are unable to discover any reason for holding that the operation of the Statute of Limitations was in any manner stayed by the pending litigation. Appellant's action to determine title was not only not inconsistent with, but was entirely consistent with, her adverse possession.

We have been somewhat slow and reluctant in arriving at the result above announced, but, the situation carefully and thoroughly considered, we are unable to justify any other conclusion.

It is well settled that adverse possession, accompanied by the well known prerequisites, for the statutory period, not only bars any action for the recovery of the land, but also operates to vest the full legal title in the possessor. [Merchants' Bank v. Evans, 51 Mo. 335, l. c. 347; Allen

v. Mansfield, 108 Mo. 343, 1. c. 348; Kirton v. Bull, 168
Mo. 622, 1. c. 633; Adams v. Gossom, 228 Mo. 566, 1. c.
578.]

In the case of Scannell v. American Soda Fountain
Co., 161 Mo. 606, 1. c. 618, VALLLIANT, J., speaking for the
court said: "A title acquired by adverse possession under
our statute is in every respect as good for purposes of
attack or defense, as a title by deeds running back to the
Government" (Citing many cases).

It therefore follows that appellant, by reason of her
adverse possession for ten years or more before the filing
of the fourth amended petition, became vested with the
legal fee-simple title to said land, and the trial court
erred in not so holding.

Since the ruling on the above point determines the
case, it becomes unnecessary to determine what title or
interest appellant may have acquired by reason of per-
formance on her part of the alleged contract.

The judgment is reversed and the cause remanded
with directions to the said circuit court to enter judgment
dismissing defendants' separate cross-bill and decreeing
the fee-simple title of said premises to be in the appel-
lant and that she recover costs of suit against the de-
fendants.

*Williamson, Blair* and *Walker, JJ.,* concur.; *Goode,
Graves* and *Woodson, JJ.,* dissent.