**Clifford MINGS, Guardian of the Person and Conservator of the Estate of Lee Roy Mings, Plaintiff–Respondent,**

v.

**Vaughn MINGS, et al., Defendants,**

**Lowell Lee Mings, Defendant–Appellant.**

No. 16341.

Missouri Court of Appeals, Southern District, Division One.

Jan. 5, 1990.

James L. Bowles, Ozark, for defendant-appellant.

Scott B. Stinson, Mountain Grove, for plaintiff-respondent.

CROW, Presiding Judge.

Lowell Lee Mings ("Lowell") appeals from a judgment declaring, insofar as pertinent here, that Lee Roy Mings ("Roy") is the owner in fee simple of a 120–acre parcel of land ("the Helton tract") in Wright County. Lowell's assignment of error is easier understood after a recital of the pertinent facts.

In 1947 Jess and Virgie Helton, as grantors, conveyed the Helton tract by warranty deed to Lowell Vaughn Mings ("Vaughn").

Vaughn married one Patricia on August 7, 1952.

Lowell was born to Vaughn and Patricia on June 28, 1953.

In September, 1953, Patricia left Vaughn and departed Wright County, taking Lowell with her.

Vaughn died intestate on December 16, 1953, survived by his wife, Patricia, and his son, Lowell.

Vaughn's estate was probated in Wright County; his mother, Goldie I. Mings ("Goldie"), was administratrix. The Helton tract was not listed in the inventory of Vaughn's estate.

Over 20 years later, on July 15, 1975, Roy, in his own behalf and as next friend of Daniel Lee Mings ("Daniel"), filed a petition in the Circuit Court of Wright County. The petition alleged, insofar as pertinent here, that the two plaintiffs were owners in fee simple absolute of certain land including the Helton tract. One of the defendants named in that suit was Vaughn, even though he had been dead since 1953. Neither Patricia nor Lowell was named a defendant. The petition averred that the plaintiffs owned the property by reason of adverse possession for "more than 28 years last past."

On October 28, 1975, the Circuit Court of Wright County entered judgment declaring that the plaintiffs (Roy and Daniel) were vested with fee simple title to the Helton tract and other land.

Some seven and a half years later, on April 23, 1983, Lowell and his mother, Patricia (now carrying the surname "Harris"), filed a petition in the Circuit Court of Wright County attacking the judgment of October 28, 1975, insofar as it affected title to the Helton tract. Lowell and Patricia averred they had not been made parties to the 1975 action, had not been summoned, and that Roy and Goldie had concealed the Helton tract from Vaughn's estate for the purpose of using the tract themselves. Lowell and Patricia pled they had been unaware of the "fraud" and the 1975 suit until May, 1981.

On July 27, 1984, the Circuit Court of Wright County entered "Summary Judgment" setting aside the judgment of October 28, 1975, as to Lowell and Patricia insofar as it vested fee simple title to the Helton tract in Roy and Daniel. The court found that portion of the 1975 judgment was void as to Lowell and Patricia because there was no service of process on them, including service by publication.

On February 19, 1986, a second amended petition was filed in the Circuit Court of Wright County by Clifford Mings, Guardian of the Person and Conservator of the Estate of Lee Roy Mings. The petition carried the same case number as the 1975 action brought by Roy and Daniel. Daniel was not named as a plaintiff (or defendant) in the second amended petition.

The second amended petition alleged, insofar as pertinent here, that Roy is "an incapacitated and disabled person," that Roy is the fee simple owner of the Helton tract, that Roy and his predecessors in title had been in adverse possession of said tract since 1952, that Patricia and Lowell claim an interest in said tract based on the 1947 deed from Jess and Virgie Helton to Vaughn, and that inasmuch as Patricia and Lowell first asserted their claim in 1983 (by their petition attacking the 1975 judgment) any claim by them is barred by § 516.010, RSMo 1986.[1]

The circuit court heard evidence August 26, 1988, and on March 21, 1989, entered findings of fact, conclusions of law, and a judgment declaring, among other things, that Roy is the owner in fee simple of the Helton tract. The facts and conclusions set forth hereunder in paragraphs numbered 1 through 8 have been extracted from those authored by the circuit court. To tailor them to this opinion we have reorganized, renumbered, and rewritten them, but their substance remains unchanged.

1. Record title to the Helton tract is in Vaughn. Lowell, as Vaughn's only lineal descendant, became vested with fee simple title to said tract upon Vaughn's death, subject to the potential dower interest of Vaughn's surviving spouse, Patricia, which interest was waived inasmuch as it was never claimed within the applicable period of limitation.

2. Roy is the brother of Vaughn and the son of Goldie. The Helton tract is part of a parcel in excess of 1,000 acres owned and operated as a farm by the Mings family. Roy and Vaughn worked together on the farm. Vaughn died as the result of a logging operation there.

3. Vaughn and Patricia lived on the Mings property, but *not* the Helton tract, prior to their separation some three months before Vaughn's death. After Patricia departed with Lowell they returned to the area only occasionally during the next 27 years and only for the purpose of allowing Lowell to visit his grandmother, Goldie.

4. Roy and his wife, Wilma, resided on the Helton tract about one year immediately following their marriage in 1949. Thereafter, during the remainder of Vaughn's lifetime, Roy and Vaughn used the Helton tract in the joint enterprises of farming and lumbering.

5. For a continuous 27–year period commencing with Vaughn's death on December

---

1. Section 516.010, RSMo 1986, provides: "No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person ... unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action."

16, 1953, and running through the end of 1980, Lowell was not in actual or constructive possession of the Helton tract and he exercised no incidents of ownership or possession regarding it. He never traveled to or upon any portion of it and paid no taxes on it.

6. For a continuous 31–year period commencing with 1949 and running through the end of 1980, Roy was in possession of the Helton tract by virtue of residing on it with his wife for a year or so after their 1949 marriage, milking cows on it for a year and constructing cattle corrals on it, renting the house on it to two different parties during the 1950's, cutting hay on it annually, storing grain in the residence building a number of years, constructing and maintaining fences around it, pasturing cattle on it at least once annually, paying all taxes on it, hiring bulldozing work done on it, leasing grazing rights on it one year during the 1970's, deeding it to a third party in 1974 (receiving it back later when the grantee failed to pay for it), and posting it against trespassers.

7. Neither Patricia nor Lowell asserted any ownership claim to the Helton tract, nor were they aware they held "record color of title" to it until 1981, and only after 1981 did they make any attempt to claim it.

8. By virtue of his continuous possession of the Helton tract commencing in 1949, Roy would have become vested with ownership by adverse possession by 1960 but for the fact that Lowell, in 1960, was under the disability of minority. Pursuant to § 516.030, RSMo 1959,[2] Lowell had an additional three years after reaching age 21 to contest Roy's claim. That three-year period expired June 28, 1977. Consequently, from that date forward Roy was vested with title to the Helton tract in fee simple absolute, and Lowell's claim is barred by § 516.010.

Lowell (alone) brings this appeal from the judgment of March 21, 1989. His sole point relied on reads:

"The [circuit] court erred in finding and concluding that the statutes of limitations contained in Sections 516.010 and 516.030 ... ran as against ... Lowell ... in 1975 when the action to quiet title as against [Lowell] was filed against him while he was under a disability (minority) where [Lowell] reached the age of 21 years on June 28, 1974 and Section 516.-030 adds an additional three years which did not expire until June 28, 1977 and the action was filed July 15, 1975."

It is immediately evident that the point misstates the circuit court's findings. The circuit court found that by reason of Lowell's minority Roy did not acquire ownership of the Helton tract by adverse possession as against Lowell until June 28, 1977, the final day of the three-year period that had commenced running the date Lowell reached age 21 (June 28, 1974).[3] What Lowell is really arguing, as we comprehend his brief, is that because he did not reach age 24 until June 28, 1977, Roy "jumped the gun" when he filed the original petition in 1975. Lowell, as we understand him, insists that the filing of the original petition suspended the running of the statute of limitations against him and the statute never resumed running at any time there-

---

**2.** Section 516.030, RSMo 1959, provided: "If any person entitled to commence any action in · sections 516.010 and 516.090 specified ... be, at the time such right or title shall first descend or accrue ... within the age of twenty-one years ... the time during which such disability shall continue shall not be deemed any portion of the time in sections 516.010 to 516.090 limited for the commencement of such action ... but such person may bring such action ... after the time so limited, and within three years after such disability is removed; provided, that no such action shall be commenced, had or maintained ... by any person laboring under the disabilities specified in this section, after twenty-four years after the cause of such action ... shall

have accrued." The statute was amended in one respect by Laws 1983, H.C.S.S.C.S.S.B. 44 and 45, pp. 804–906. The amendment is immaterial to any issue in this appeal.

**3.** There is an obvious error in a date appearing in the circuit court's findings. That date arguably supports Lowell's contention that the circuit court found Roy became vested with ownership of the Helton tract as against Lowell in 1975. It is clear to us, reading the circuit court's findings in context, that the circuit court held Roy did not acquire ownership of the Helton tract as against Lowell until June 28, 1977.

after. That being so, says Lowell, Roy could not, in the 1988 trial, use any of the time after July 15, 1975, to establish ownership by adverse possession.

Lowell cites one case in support of his theory: *Matthews v. Karnes*, 320 Mo. 962, 9 S.W.2d 628 (1928). There the plaintiff, who did not have possession of the land in dispute, brought an action to quiet title to it. The defendant, who held possession of the land, pled as a defense the ten-year statute of limitations (then § 1305, RSMo 1919, now § 516.010, RSMo 1986). The evidence showed the suit was commenced less than ten years after the defendant's adverse possession began. 9 S.W.2d at 631. The defendant argued the commencement of the suit did not interrupt the running of the statute, and that inasmuch as he had been in adverse possession more than ten years by the time he filed his answer, he should prevail. The Supreme Court of Missouri disagreed, holding that the filing of the petition interrupted the running of the statute. 9 S.W.2d at 632.

The logic of *Matthews* is unassailable. When a party commences an action claiming ownership of land he does not possess it would be ludicrous to hold that the statute of limitations continues to run *against him* and *in favor* of the *occupant*. Such a holding would enable a squatter who had been in possession less than ten years at the commencement of the suit to perfect his title by adverse possession if he were able to drag out the litigation past ten years from the date his occupancy began.

In the instant case, however, it was the party in possession (Roy) who brought the action in 1975 seeking a decree declaring him (and Daniel) owners of the Helton tract. Lowell's hypothesis, if followed, would mean that Roy, having commenced the instant proceeding before Lowell reached age 24, could never obtain a decree establishing Roy's ownership even though Roy had been in possession of the Helton tract over 29 years since Vaughn's death when Lowell first asserted his claim of ownership in 1983 by filing his petition to set aside the 1975 judgment. To state such a theory is to demonstrate its absurdity.

While § 516.010[1] is written in terms of barring a party from maintaining an action to recover land unless he or his predecessor in title has been in possession of it within ten years before commencement of the suit, the statute also operates to vest ownership of land in one who has been in adverse possession ten years. In *Allen v. Mansfield*, 82 Mo. 688, 693 (1884), the court said:

> "The ten years' consecutive adverse possession, under claim of title, gives the title to the occupant as effectually as any written conveyance. It takes away the title of the real owner and transfers it to the occupant. 'The party who acquires a title to land under the statute by possession adverse to the true owner, acquires all the title of the true owner precisely as if he had a deed from him.' The statute of limitations gives a perfect title."

In *Moore v. Hoffman*, 327 Mo. 852, 39 S.W.2d 339, 343 (1931), the court explained:

> "The law is well settled in this state that adverse possession of land for the required time and of the requisite character not only bars any and every action brought to recover such land or an interest therein, but extinguishes the claimant's title and confers on the party in possession a full title in fee, as much so as a warranty deed from the true owner. 'Adverse possession not only bars an action but confers an independent title.' "

*Accord: Kirton v. Bull*, 168 Mo. 622, 68 S.W. 927, 930 (1902).

It is evident that had Roy never filed any action to establish ownership of the Helton tract, and had Lowell commenced his own action in 1983 to recover the Helton tract, Roy's adverse possession since Vaughn's death would have long since ripened into title as against Lowell. The issue we must resolve is whether the filing of the petition by Roy on July 15, 1975, suspended the running of the three-year period provided for in § 516.030 against Lowell so that Roy, at the 1988 trial, could not make use of the evidence that he had continued in adverse possession of the Helton tract from and after July 15, 1975.

The question is squarely answered in *Peper v. St. Louis Union Trust Co.*, 281 Mo. 562, 219 S.W. 942 (banc 1920). There the occupant went into possession of a house and lot in 1900. It was titled in her father's name. The father died in 1903. On January 27, 1904, the occupant filed suit against the father's devisees to determine title, averring she held equitable title by virtue of a verbal contract with her father. The case was tried to judgment, reversed on appeal, and tried anew, resulting in a judgment for the devisees. On appeal from that judgment the Supreme Court of Missouri held that the occupant had been in adverse possession of the property since, at least, from the date of the institution of the suit (January 27, 1904) until the date of the second trial, January 29, 1917. 219 S.W. at 946. The opinion continued:

"If the defendants had any doubt as to the nature of appellant's possession prior thereto, all doubt must have been dispelled when on January 27, 1904, appellant, then in possession, instituted this suit to determine the title ... and asserted her claim to the entire title.

Even if defendants' theory be correct, that the appellant and defendants then owned the land as tenants in common, such conduct upon the part of appellant, then in actual possession, amounted to an ouster of the other cotenants, and was certainly sufficient to impart notice to them that an adverse possession was intended to be asserted against them. If, then, nothing transpired to arrest the running of the 10–year statute of limitations, her legal title by adverse possession ripened long prior to February 25, 1915, the date of the filing of the fourth amended petition herein (being the petition upon which the trial was had)." (Citations omitted.) *Id.* 219 S.W. at 946.

The opinion then dealt with the question of whether anything had suspended the running of the ten-year statute of limitations (§ 1879, RSMo 1909, which read then just as § 516.010, RSMo 1986, reads now). The opinion said:

"It becomes at once apparent that, if defendants or those under whom they claim have arrested the operation of said statute in the instant case, it must have been accomplished by the bringing of some action within the 10–year period therein specified to recover said land or the possession thereof. It was, of course, not necessary that defendants should have instituted a separate and independent suit to recover said land or the possession thereof, but any proper plea to that effect in the answer by way of cross-bill would have been sufficient." 219 S.W. at 946.

The opinion then determined that the defendants' pleadings were insufficient for such purpose. *Id.* 219 S.W. at 947. The opinion concluded:

"Under such conditions we are unable to discover any reason for holding that the operation of the statute of limitations was in any manner stayed by the pending litigation. Appellant's action to determine title was not only not inconsistent with, but was entirely consistent with, her adverse possession....

It is well settled that adverse possession, accompanied by the well-known prerequisites for the statutory period, not only bars any action for the recovery of the land, but also operates to vest the full legal title in the possessor....

It therefore follows that appellant, by reason of her adverse possession for 10 years or more before the filing of the fourth amended petition, became vested with the legal fee-simple title to said land, and the trial court erred in not so holding." *Id.* 219 S.W. at 948[7] and [8].

The Supreme Court reversed the judgment in *Peper* and remanded the case with directions to enter judgment declaring fee simple title to the property in the occupant. *Id.* 219 S.W. at 948.

It is clear that in *Peper* the filing of suit by the occupant to determine title did not suspend the running of the statute of limitations against other potential claimants. Indeed, the opinion allowed the occupant to establish her ownership by adverse possession based totally on her years of possession *after suit was filed.*

In the instant case Roy was in adverse possession of the Helton tract for over 20 years between Vaughn's death and the date Lowell reached age 21 (June 28, 1974). On the latter date, by virtue of § 516.030, Lowell had three years to commence an action to recover the Helton tract. *Gray v. Yates,* 67 Mo. 601, 602–03 (1878). One of those three years (plus 16 days) had expired by the time Roy filed the original petition July 15, 1975.

Consistent with *Peper* we hold that the filing of the original petition by Roy did not suspend the running against Lowell of the three-year period provided by § 516.030. Consequently, the three-year period commencing June 28, 1974, during which Lowell could have instituted an action to recover the Helton tract continued to run against him from and after July 15, 1975. The final day of Lowell's three-year period under § 516.030 was, as we have seen, June 28, 1977.

The circuit court correctly held that at the time Lowell first filed a pleading asserting a claim to the Helton tract (April 23, 1983) Roy had long since acquired title to it by adverse possession.

Lowell's assignment of error is denied and the judgment is affirmed.

GREENE and PREWITT, JJ., concur.