WILLIAM H. SEIBERT et al. v. E. L. HOPE et al.,
Appellants.

Division Two, June 29, 1909.

1. **ADVERSE POSSESSION: Cotenancy: Limitations.** To estab-
lish title in one cotenant, as against the others by adverse pos-
session, there must be such outward acts of exclusive owner-
ship, of an unequivocal character, as to impart notice to the
others that an adverse possession is intended to be asserted
against them. Otherwise, the defense of the Statute of Limi-
tations, however long the one cotenant may have occupied,
managed and enjoyed the property and paid taxes thereon,
will not avail.

2. ——: ——: ——: **Thirty Years.** The owner of eighty
acres died, leaving six children. John bought the interests of
three of them and occupied the land, managed it, collected the
rents, appropriated its products, and paid taxes thereon for
nearly thirty years prior to 1901, when he placed upon it a
deed of trust under which it was sold in 1903 to defendant,
who was at the sale notified that the heirs of John's sister
had an interest in the land. John was unmarried and lived
with said sister for the twenty years prior to his death in
1902; and the other brother was absent from the neighborhood.
No one ever heard John deny the ownership of either in a one-
sixth each to the land, and defendant testified that he never
heard John express himself as to the interest he had in it.
John's deed from one of the heirs made in 1874 conveyed all
the land, but that deed was not recorded until 1894. *Held*,
that the heirs of the sister and the grantees (in 1903) of the
absent brother were not barred by adverse possession.

Appeal from Cape Girardeau Circuit Court.—*Hon.
Henry C. Riley*, Judge.

AFFIRMED.

*John A. Hope* for appellants.

(1) In all the deeds in defendant Hope's chain
of title, to-wit: the warranty deed from James E. to
John R. McKee, dated August 19, 1874; the John R.
McKee deed of trust dated November 15, 1901, and the

sheriff's deed as trustee in said deed of trust, the grantors assumed to convey the whole title to the land, and as sole owners thereof; and each of these conveyances, in itself, operated as an ouster of plaintiffs and those through whom they claim. Long v. Stapp, 49 Mo. 5C8. (2) On August 19, 1874, James McKee conveyed the entire tract to John R. McKee, defendant's grantor, by a deed purporting to convey the whole title, warranting the title and containing all the usual covenants of warranty. This 'was an ouster of his alleged cotenants, and the Statute of Limitations commenced to run from that time in favor of John R. McKee and his grantees. From the date of the deed until his death in March, 1902, the land was known as the John R. McKee place, and he was in the continuous possession and control of the land, claimed the whole title, and got all the rents and profits without accounting to his alleged cotenants for any part thereof. And it was assessed for taxes during all that time as his property. From McKee's death until the foreclosure of the deed of trust it was in the exclusive control and actual possession of Theophilus Robb as devisee under his will; and since his purchase at the sale under the deed of trust defendant has been in the continuous, exclusive, adverse, actual possession of the land. It follows from these facts that plaintiffs' alleged interest has long since been barred by limitations. Sec. 4262, R. S. 1899. (3) For thirty-one years, from 1873 to 1904, inclusive, the land was assessed for taxes as the property of John R. McKee. It is not pretended that plaintiffs or Mr. Seibert or Montgomery McKee, through whom plaintiffs claim, ever paid a cent of taxes on the land. Under this view of the case, and considering the long, adverse, actual possession of the land by defendant, and his grantor, John R. McKee, defendant is the owner of the whole. Sec. 4268, R. S. 1899; Bank v. Dandridge, 12 Wheat. (U. S.) 64; Long v. Mining Co., 68 Mo. 432.

*Wilson Cramer* for respondents.

(1)   Euphrasia Seibert, formerly Euphrasia Mc-Kee, and E. M. McKee, from whom plaintiffs derive title, and John R. McKee, under whom defendants claim, were tenants in common, having inherited the land from their father, Ewing Y. McKee. (2)   While the evidence tends to show that John R. McKee controlled the land and collected the rents, it also shows that the deed from James McKee, one of the brothers, to John R. McKee, relied upon as showing ouster, which is dated August 19, 1874, was not recorded until March 1, 1894, nearly nineteen years later; that there were no buildings on the place; that John R. McKee, who died in 1902, for the last eighteen or twenty years of his life lived with his sister Euphrasia Seibert, and after her death in January, 1901, with her husband, Wm. H. Seibert, up to the time of his own death; that Euphrasia Seibert was continually asserting her rights; that E. M. McKee had removed from the neighborhood and was living at the city of Cape Girardeau; that John R. McKee at no time denied the rights of his sister and brother, but, on the contrary, recognized them in 1888.

GANTT, P. J.—This is an appeal by defendants from a judgment of partition by the circuit court of Cape Girardeau county of the southeast quarter of the northwest quarter and the southwest quarter of the northeast quarter of section 13, in township 33, range 12, among some of the heirs at law of Ewing Y. McKee and the grantee of certain of said heirs.

Ewing Y. McKee left surviving him as his only heirs at law the following named children: James, Lizzie, Susan, John R., Euphrasia and E. M. McKee. John R. McKee purchased the interest of James, Lizzie and Susan McKee and thus became the owner of four-sixths of said land.   On the 15th of Novem-

ber, 1901, John R. McKee executed to defendant E. L. Hope a deed of trust under which the premises were subsequently sold, and Hope became the purchaser and received a trustee's deed of date December 12, 1903.

At this sale public notice was given that the heirs of Euphrasia Seibert (formerly Euphrasia McKee) had an interest in the land. Euphrasia McKee married Hickman Robb, by whom she had one son, Theophilus Robb, one of the defendants in this case. Hickman Robb died in 1872 and in January, 1880, his widow, Euphrasia, married plaintiff William H. Seibert, by whom she had two children, George E. and Lillian Seibert, plaintiffs in this case. Mrs. Euphrasia Seibert died January 29, 1901, leaving as her heirs her husband, William H. Seibert and her three children, Theophilus Robb and George E. and Lillian Seibert.

On the 14th of December, 1903, E. M. McKee, son of Ewing Y. McKee, conveyed his undivided one-sixth of said land to his nephew and niece George E. and Lillian Seibert. The foregoing facts were alleged and there is no dispute about them, but defendant E. L. Hope in his answer alleges: "that he is now and was at the time of the institution of this suit in the actual, exclusive, continuous, open and notorious possession of said real estate adverse and hostile to the plain-- tiffs. That for more than thirty years prior to the institution of this suit this defendant and his grantor, John R. McKee, had been continuously in the actual, adverse, open, hostile, exclusive and notorious possession of said real estate, claiming to be the owners thereof and to have the whole title thereto, and therefore defendant states that plaintiffs' claim to said land is barred by the Statute of Limitations in such cases provided."

At the May term, 1905, the cause was tried to the court and the court found the several parties were entitled as follows:

E. L. Hope, as the owner of the shares of James, Lizzie, Susan and John R. McKee, to 24-36.

Theophilus Robb, as heir of Euphrasia (McKee) Seibert, subject to the curtesy of William Seibert, 2-36.

George E. Seibert and Lillian Seibert, as heirs of Euphrasia Seibert, subject to curtesy, 4-36.

George E. and Lillian, as grantees of E. M. McKee, 6-36.

William H. Seibert, as husband of Euphrasia (McKee) Seibert, curtesy in 6-36.

And rendered judgment accordingly and ordered the land sold for partition.

The evidence introduced on the issue of the Statute of Limitations, on the part of defendant Hope, tended to show that after purchasing the three shares, John R. McKee controlled the land and collected the rents, but outside of general statements that he owned the land, there was nothing to indicate that he disputed the rights of his sister Euphrasia or of his brother E. M. McKee. Mr. Hope, the defendant, testified that he never heard John R. McKee express himself as to the interest he had in the land. He concluded he owned it because he managed it and at one time offered to sell it.

Before defendant bought at trustee's sale he was notified of the claim of Euphrasia's children. No person ever heard John R. deny the interest of his sister and brother. On the other hand, in the year 1888, fourteen years after he had purchased his brother James's share, he spoke of the interest of the other heirs, and at that time there were no other heirs save Mrs. Seibert and his brother E. M. McKee.

Moreover, he made his home for twenty years with his sister, Mrs. Seibert, and she always asserted her rights and he never denied her interest. It is true he managed the place, collected the rents and paid the taxes. There were no buildings on the land. While

defendant attaches importance to the fact that James McKee sold the land and not his sixth therein, it is also true that this deed was made in 1874 and never recorded until 1894. The only question is whether the circuit court erred in holding that the evidence did not establish an ouster of Mrs. Euphrasia Seibert and E. M. McKee. By presumption of law the possession of one tenant in common is the possession of his cotenants, and it is the settled law of this State that, to establish title in one cotenant as against the others by adverse possession, there must be such outward acts of exclusive ownership of an unequivocal character as to impart notice to the cotenants that an adverse possession is intended to be asserted against them. [Warfield v. Lindell, 30 Mo. l. c. 282; Benoist v. Rothschild, 145 Mo. l. c. 408; Hutson v. Hutson, 139 Mo. l. c. 236; Coberly v. Coberly, 189 Mo. l. c. 15.]

In this last-cited case, it was said: "Mere verbal assertions of ownership will not do. Acts of an unequivocal character and of such inherent nature as to impart information and give notice to his cotenants of actual disseizin are required." When it is remembered that John R. McKee was a single man; that he owned two-thirds of the tract; that his sister was a married woman and he made his home with her for twenty years and no one ever heard him deny her ownership to her one-sixth, or his brother's right, the latter having left the neighborhood for many years, there is nothing to show that his possession was antagonistic to their rights. They might very naturally leave it to him to rent and pay the taxes, and it is not at all unusual that brothers and sisters permit a homestead to be managed in this manner, without a thought of being ousted of their title by an act or acts of kindness and consideration. John R. McKee never having denied his sister and brother's rights, there is no foundation for defendant Hope's claim of ouster.

We think the circuit court was amply justified in holding that the evidence did not establish an ouster by adverse possession and its judgment is affirmed.

*Burgess* and *Fox, JJ.,* concur.