## FRANK ALLEN v. ALVIN P. MORRIS et al., Appellants.

**Division One, June 29, 1912.**

1. **EVIDENCE: Verbal Acts: Statements by One in Possession.** In a suit to quiet title other witnesses may testify what statements were made by persons in the actual possession of the land in suit as to how they held the land.

2. **COTENANCY: Adverse Possession: Limitations.** Presumptively the possession of one cotenant is the possession of all; but there are exceptions to the rule, one of which is that, if the cotenant in possession, by acts clearly repudiating and denying the rights of his cotenants and showing a clear intention to hold adversely to them, sets up a claim as sole owner of the land. the Statute of Limitations will inure to his benefit.

Allen v. Morris.

3. ———: ———: ———: Notice. But it is not essential that these acts be brought to the notice of the other cotenant or any of them. If such acts are such as to demonstrate to the immediate and surrounding neighbors an adverse claim, the other cotenants must take notice thereof, although they reside in a distant State.

4. ———: ———: What Acts Show Adverse Possession. Where the title was in the father who died in 1848, leaving children by a former wife, and two small children by his surviving second wife, who died in 1863, presumptively the title descended to all the children, and the children of the second wife who remained in possession after her death presumptively held possession for themselves and the children of the first wife. But where there is evidence that the second wife's money was used to pay for the land and her children alone remained in possession, the fencing and building of houses thereon by them and the conveyance or incumbrance of the land by them as the sole owners are not referable to a recognition of a cotenancy, although the payment of taxes and the appropriation of the rents and profits might not alone be held to show a claim adverse to the other cotenants. But when done for a long series of years, they are, when taken in connection with the other matters, important.

4. ———: ———: ———: Incumbrance Within Ten Years. Recorded incumbrances or conveyances of the land by two of the cotenants, which declare that each was conveying an undivided half interest, although made and recorded only six or seven years prior to the suit to quiet title, emphasize the verbal acts of adverse possession and ownership occurring for many years prior to such mortgages and deeds.

Appeal from Bates Circuit Court.—*Hon. C. A. Denton*, Judge.

Affirmed.

*S. W. Dooley* for appellants.

. (1) The possession of one tenant in common is the possession of all. Bernecker v. Miller, 40 Mo. 473; Long v. McDow, 87 Mo. 197; Rodney v. McLaughlin, 97 Mo. 426; Stevens v. Martin, 168 Mo. 407. The entry and possession of one tenant in common is prima facie in support of the title of his cotenants. There

must be some notorious and unequivocal act, indicating the intention to hold adversely. A declaration of such intention to a stranger is not sufficient unless brought to the knowledge of the cotenant. Warfield v. Lindell, 30 Mo. 272. If the acts are of such a nature as the law will presume to be notice by persons of diligence in attending to their own interests and of such unequivocal character as not to be easily misunderstood, it does not devolve upon the possessor to show that actual notice was given or prove a probable actual knowledge; it is sufficient if the act is overt and notorious. Lapeyre v. Paul, 47 Mo. 586; Musick v. Barney, 49 Mo. 458; McQuiddy v. Ware, 67 Mo. 74; Colvin v. Hauenstein, 110 Mo. 575; Dunlap v. Griffith, 146 Mo. 283; Golden v. Tyler, 180 Mo. 196; Chapman v. Kullman, 191 Mo. 237; Coberly v. Coberly, 189 Mo. 1; Hendrick v. Musgrove, 183 Mo. 310. Mere possession and exclusive receipts of rents and profits without any account or demand for the period of twenty-six years, is not of itself sufficient to raise a legal presumption of disseisin. Warfield v. Lindells, 30 Mo. 272. (2) The only overt act of plaintiff's grantors is Cerena Morris's deeds of trust on her interest in this land, described as an undivided half interest. If these should be deemed inconsistent with defendant's claim so as to impart constructive notice, they fall short of the period of ten years required by law, as they are dated in March and October 1899, or eight years before this suit was brought. McCune v. Goodwillie, 204 Mo. 339; Hendricks v. Musgrove, 183 Mo. 300. (3) The declaration of title first made about seventeen years after a friendly or permissive possession had run in them and thirty-four since that of the mother began, will not hold unless actual knowledge of them is brought home to the defendant. McCune v. Goodwillie, 204 Mo. 339; Heckescher v. Cooper, 203 Mo. 293. (4) The rule as to the nature and character of adverse possession which will operate as a

bar against a tenant in common in favor of his cotenant is much more stringent than where such relation does not exist. Golden v. Tyler, 180 Mo. 196. (5) The entry of plaintiff's grantors was friendly, afterwards became permissive and that character being stamped upon the use the law presumes it continued until a distinct and positive assertion of right hostile to the owner, and brought home to him (actual or constructive), transformed it into one adverse, exclusive and independent of defendants' title. Heckescher v. Cooper, 203 Mo. 293; Lumber Company v. Jewell, 200 Mo. 716; Pitzman v. Boyce, 111 Mo. 392; Hunnewell v. Burchett, 152 Mo. 611; Hunnewell v. Adams, 153 Mo. 400; Budd v. Collins, 69 Mo. 129; Estes v. Long, 71 Mo. 605; Wilson v. Lerche, 90 Mo. 403; Wilkerson v. Thompson, 82 Mo. 317.

*Silvers & Silvers* for respondent.

(1) Continuous possession, payment of taxes and taking of profits for a period of twenty-six years, acquiesced in by defendant, gives title to the plaintiff possessor. Warfield v. Lindell, 38 Mo. 581. Especially is this true when the possession is coupled with the making of improvements. Dunlap v. Griffith, 146 Mo. 293; Hutson v. Hutson, 139 Mo. 236; Hendricks v. Musgrove, 183 Mo. 300. (2) Actual notice of the adverse claim to defendant is unnecessary. Dunlap v. Griffith, 146 Mo. 294; Boyce v. Railroad, 168 Mo. 593; Hendricks v. Musgrove, 183 Mo. 309. (3) Oral statements of claimants by adverse possession, made to third persons, are admissible along with other facts on the question of adverse possession. Dunlap v. Griffith, 146 Mo. 294.

GRAVES, P. J.—Action to quiet title to eighty acres of land in Bates county. In the petition it is charged that the land was entered by one John Morris in 1845; that said John Morris, whom we will here-

after designate as John Morris, Sr., died in 1847 or 1848, leaving a widow and two sets of children. One set of these children were by the first wife of John Morris, Sr., and the other by his second wife and widow. The defendants in the suit are the first set of children and their descendants, where any had died. The defendants also include husbands of some of the married girls. The widow or second wife died in 1863. Plaintiff claimed title through the children of the second wife, alleging that the land was purchased with the money of the second wife, and alleging further that he and his grantors had been in the adverse possession of the land for more than fifty years, and had during all that time paid the taxes thereon. The petition further charged that the records of the county failed to disclose any conveyance of the land by the defendants, or the first set of children. Service was had by publication and in due course of time a default judgment for plaintiff was entered. In due time one of the defendants, Alvin P. Morris, moved to set aside the judgment by default, and the judgment as to him was set aside. Thereupon the said Alvin P. Morris filed his answer, and the plaintiff his reply, and upon the issues thus tendered a trial was had, and judgment was again entered for the plaintiff. It should be noted that, after the default judgment, and before its vacation as above indicated, the plaintiff conveyed one forty acres of the land to Frank Tyler, and the remainder thereof to Cerena Morris.

This fact appearing at the trial, the last decree was entered to accord with such fact. From this adverse decree Alvin P. Morris has appealed, but the other defendants have abided the judgment of the court. Points made will be noted in the course of the opinion.

I. During the course of the trial many objections were made as to the admission of evidence which

do not seem to be pressed in the brief here, although they are made points under the proper assignment of errors. These objections were to the admission of the evidence of certain witnesses who testified as to what Cerena and John Morris, Jr., said about how they held this eighty acres of land. The statements proven were statements made whilst Cerena and John were in the actual possession of the lands. This evidence was proper. Such statements made by one in possession are denominated by the law as verbal acts tending to characterize the possession. The rule in this State is thus tersely put in Dunlap v. Griffith, 146 Mo. l. c. 294: ''As to the admission and exclusion of evidence. The court correctly ruled that Henry Griffith's declarations were inadmissible because he was not in possession of the land when the proposed declarations were made, and the statements of Daniel Griffith asserting title while in possession were admissible as verbal acts tending to characterize his possession. [Burgert v. Borchert, 59 Mo. 80; Railroad v. Clark, 68 Mo. 371; Lemmon v. Hartsook, 80 Mo. 13; Miss. Co. v. Vowels, 101 Mo. 225.]''

We can add nothing to the discussion of the point as found in the cases cited above. In the case at bar the trial court properly admitted this evidence.

II. The crux of this case lies in the character of the evidence tending to show an adverse holding of this land by the children of the second wife, as against the children of the first wife. When the father died in 1848 these children were small. Cerena, the daughter, was not over four or five years old. In 1852 the appellant left for Oregon, where he has since been. The children of the second wife were not of such age as to intelligently understand business affairs. Cerena, or Serena, as it is sometimes put in the record, was but eight or nine years old when appellant left, and the boy John a little older. Their

mother died in 1863. As a legal proposition the legal
title to the land being in the name of the father passed
upon his death to all his children, and upon the face
of the record they became tenants in common.

But there can be adverse possession as between
tenants in common. It is true that presumptively
the possession of one is the possession of all, but pos-
session of a different character may be shown. The
only question is the character and quantum of proof.

Upon the general rule in the recent case of Nickey
v. Leader, 235 Mo. 1. c. 43, we said: "The general
rule is that the possession of one joint tenant is the
possession of all. This rule has its exceptions. Al-
though the deed may in law create a joint tenancy,
yet if one of the joint tenants is in actual possession,
claiming the title as against cotenants and the world,
the Statute of Limitations will inure to the benefit
of such claimant. [Warfield v. Lindell, 38 Mo. 561;
Dunlap v. Griffith, 146 Mo. 283; Whitaker v. Whitaker,
157 Mo. 342; Hendricks v. Musgrove, 183 Mo. 300.]"

And as to the character of the proof in the same
case we further said at page 44: "Of course the tes-
timony as to the adverse possession of one cotenant
as against his fellows must be clear and pointed. In
the case at bar, there are many facts in evidence
strongly tending to show that Marshall claimed the
absolute ownership of this house and small tract of
land. In fact, it appears that only recently has a con-
trary claim been made. The court was authorized to
find for respondent upon this theory of the case alone,
and having so found we will not disturb the judg-
ment."

What was said in the Nickey case may well be
said here. There are many circumstances in this case
lending credence to the theory that Cerena and John
Morris, Jr., were claiming the whole title to this land.
It appears that they were impressed with the idea that
their mother bought the land with funds of her own.

When by the ravages of war the buildings and improvements (moderate as they were) were swept away, they caused them to be replaced. From the death of their mother in 1863, they paid the taxes. Not a child of the first wife ever claimed an interest in this land, so far as the record goes, except this appellant, and the character of his claims we discuss later. Under the proof, for years the two children left of the second wife claimed the land as their own, improved it as their own, used the rents and profits as their own, and paid the taxes thereon as their own. It is true many of these things are referable to the acts of cotenants, but all of them are not so referable. The fencing and building of houses are not so referable. Neither is the claim of ownership to be so referred. In addition to the claim of ownership dating back far beyond the statutory period, we find later, but six to seven years prior to this suit, that they sold and incumbered the lands, always expressing in the conveyances that each one was conveying an undivided one-half interest in the tract of eighty acres. It is true that these record evidences of their adverse claim do not go back the required number of years, but they do emphasize the verbal acts of adverse possession occurring for many years prior to the deeds and mortgages. Whilst the acts (whether verbal or otherwise) to show an adverse claim must be acts clearly repudiating and denying the rights of the cotenant, and must be such as will show a clear intention to hold adversely as to the other cotenants, yet "it is not essential, however, that it be shown that such acts were brought to the notice of the cotenant." [Hendricks v. Musgrove, 183 Mo. l. c. 309, and cases cited therein.] If such acts are such as to demonstrate to the immediate and surrounding neighbors an adverse claim, the cotenant must take notice thereof. In other words, his knowledge must be the general knowledge of the neighborhood wherein the land is situated.

For practically forty years Cerena and John Morris, Jr., claimed the land. During all this time they appropriated the rents and profits. During the same time they improved it and kept up the improvements, and later conveyed it as their own. Their whole conduct toward it was inconsistent with the recognition of the claims of any other parties to an interest therein.

Another significant fact in this record is that of all the children born of the first wife, this appellant is the only one who ever asserted a claim. This fact would indicate that they, like the children of the second wife, were impressed with the idea that the lands were purchased with the funds of the second wife, and abandoned all claim thereto. Appellant claims that he had an understanding with Cerena and John that they were to use the land and pay the taxes. He testified by deposition, and expresses many conclusions. Just when such an understanding was had does not appear. How it was had does not appear. It could not have been before he left this country in 1852, for two reasons. First, these children were then very young, and, secondly, the widow was then in possession and remained in possession until her death in 1863. He does not claim to have made it by correspondence, and yet this is the only way in which it could have been made, for the record does not disclose his presence in Missouri but once since his departure in 1852, and that was about eight years before the trial in the lower court. At that time he visited his half brother and sister, but does not claim in his deposition to have ever mentioned the farm to them. They say that he did not mention it. He does not claim to have then made any arrangement as to the payment of taxes, so that if he ever had such an arrangement it must have been by letter, yet he makes no such claim and no such proof in the deposition. His deposition in many respects is valueless because of mere

conclusions stated. He does claim, however, to have gotten a letter from Cerena Morris some eight years before the suit, in which, he says, she asked him what he would take for his interest in the land. The loss of this letter is shown and one of his daughters testifies in a way to the contents, as did appellant. Cerena Morris denies ever writing such a letter, and upon this disputed point we are impressed as was the trial court, i. e., that no such letter was written. It strikes us as peculiarly strange that Cerena Morris for long years would openly claim this land as her own, as the record shows, and then write a letter such as claimed. It also appears strange to us that, if appellant knew or thought he had an interest in this land, he would await the ripe old age of eighty-two or better to assert it. His long silence is against him.

For more than thirty years he pays no taxes, and furnishes no excuse therefor, except as above discussed.

Upon the whole record we are satisfied with the decree *nisi*. To our minds it measured out the full equities of the case. Let it be affirmed. All concur.