John WUNDERLICH and Mary Wunderlich, (Plaintiffs) Respondents,

v.

Norman BAUMGARTH, and Norman Baumgarth as Executor of the Estate of Phillip Baumgarth, Deceased, (Defendants) Appellants,

and

Arthur Baumgarth and Dolphus A. Stahlmann, Defendants.

No. 53873.

Supreme Court of Missouri,

Division No. 1.

Feb. 10, 1969.

Thomas J. Briegel, Charles Hansen, Union, for respondents.

Martin M. Lipsitz, Andrew F. Tegethoff, Jr., St. Louis, for appellants.

HOLMAN, Judge.

In this action plaintiffs seek to quiet title to a 124-acre farm located in Franklin County. They claim title by reason of a deed from prior owners and also by adverse possession. Defendant Norman Baumgarth, individually and as executor, filed an answer and counterclaim to quiet title. Arthur Baumgarth defaulted. Dol-

phus A. Stahlmann filed an answer and counterclaim but in the course of the trial withdrew those pleadings and took no further part in the trial. A trial before the court resulted in findings favorable to plaintiffs and it was decreed that they were the fee simple owners of the real estate and that defendants had no title or interest therein.

There is very little controversy concerning the facts. Our task is to determine the legal effect of the facts stipulated and developed in the evidence. The facts are as follows:

On January 8, 1929, Martin E. Stahlmann was the owner of the land here involved. On that date he, joined by his wife Anna, deeded the land to John Wunderlich and Annettie E. Wunderlich, his wife. Annettie, who is generally referred to as "Nettie," was a daughter of the Stahlmanns. They had two other children, Lilly Baumgarth and Dolphus A. Stahlmann. The deed from the Stahlmanns, in addition to the land, purported to convey "all livestock, farm implements, and household and kitchen furniture now on said premises." It also contained the following provisions: "$3,000 to my Executors one year after death of Grantors or the survivor and said Grantees as a further consideration shall pay to the Grantors herein or the survivor the one third of all crops or livestock sold (except milk, butter and cattle) and said Grantors or the survivor of them are to have the use of the East room and kitchen of the dwelling on said farm as long as they shall live. A failure to comply with conditions makes this deed null and void."

John and Nettie moved into the house on the farm at about the time they received the aforementioned deed and John has lived there ever since. The Wunderlichs took care of Mr. Stahlmann until his death in 1935. There was no administration on his estate and none of his heirs made any claim against plaintiff for the $3,000 mentioned in the deed. Nettie died in 1940.

Thereafter, John took care of Anna Stahlmann, who had suffered a stoke, until her death on January 16, 1944. Her estate was administered, but no real estate was inventoried and the $3,000 mentioned in the 1929 deed was not listed as an asset of the estate. It is admitted that the $3,000 was never paid and that no one made any request or claim upon John Wunderlich to pay it.

Lilly Baumgarth lived in St. Louis with her husband Phillip. She and her husband frequently went to the farm on weekends to visit John and Nettie. Between 1940 and 1944 Lilly would assist John in caring for her mother and upon her weekend visits would clean the house, cook food, and would take the soiled clothes back to her home where they were laundered and returned on her next visit.

Lilly died intestate in 1954 and was survived by her husband Phillip and her brother Dolphus. Phillip died testate in 1966. He was survived by his son, defendant Norman Baumgarth (not the son of Lilly), who was residual beneficiary. Arthur Baumgarth, another son of Phillip whose whereabouts is unknown, may have survived.

Dolphus, prior to the filing of this suit, had not been seen nor heard from since 1949. Before that time he lived on this farm but was primarily engaged in fishing and hunting and did not do any work. He apparently was located after this suit was filed and, as stated, filed pleadings which were later withdrawn.

John Wunderlich made a number of conveyances concerning this farm. On November 25, 1946, he executed an easement to the Union Electric Company for the construction and maintenance of a distribution line over a part of the farm. On July 12, 1955, John and his second wife Mary executed a deed to the State Highway Commission for a right-of-way over a part of the farm upon which was constructed State Highway UU. On May 24, 1949, John executed a deed conveying the farm

to Jos. Guenther and on the same day Jos. Guenther reconveyed the property to John and Dolphus as joint tenants. Apparently that conveyance was not satisfactory to John so on June 13, 1949, about three weeks later, he and Dolphus executed a deed to A. C. Schroeder conveying the farm but each reserved a life estate therein. On the same day Schroeder reconveyed the property to John. This deed contained a provision that it was subject to the life estate reservation of John and Dolphus.

In 1953 John married his second wife, Mary. Mary was a sister of Phillip Baumgarth and hence is an aunt of the only contesting defendant, Norman Baumgarth. In 1959, John made a deed conveying the farm to himself and Mary as tenants by the entireties.

It is undisputed that John has occupied this farm from 1929 to date and has paid the taxes thereon during all of that period of time. He has managed the farm completely, either farming the land or renting it to others; he has never accounted to anyone for any of the proceeds received from the farm, and no one (prior to the filing of this suit) ever made any claim to any title or interest in the farm or requested that John account for any of the proceeds from the farm. In 1953 John paid for the electric wiring of the buildings on the farm, and during the period of occupancy built a corncrib, machine shed, and chicken house thereon. He has kept the fences and improvements repaired and the buildings painted. He caused the creek through the farm to be straightened by use of a bulldozer and built two dams on the creek to help control flooding. All of the evidence indicated that there was a friendly relationship at all times between John and the Baumgarths.

Defendant Norman Baumgarth testified concerning the visits his father and stepmother made to the farm on weekends. He stated that his father Phillip was a carpenter and helped John build the corncrib

and machine shed 25 years before, without pay. This witness further testified that after his stepmother died in 1956 "we" (Phillip and Norman) had been to the farm only two or three times; that the last time he had been there was six years prior to trial; that he never offered to pay any farm expenses, or asked for any of the farm proceeds, and never told plaintiff that he was claiming any interest in the farm.

There was evidence offered that Lilly had paid for having some of the rooms in the house papered about a month before John and Mary were married, but plaintiff in rebuttal testified that the papering was a wedding present from Lilly.

Lawrence Petty, Mary's son-in-law, testified that he had visited the farm every other Sunday since 1953 and had never seen Lilly, Phillip, or Norman Baumgarth there.

At the beginning of the trial it was stipulated that the right of the defendant Dolphus A. Stahlmann to a life estate in an undivided one-half interest in the farm would not be litigated in this suit. Shortly thereafter the cause was continued for further hearing until January 24, 1968, at which time Dolphus filed a written dismissal in which he withdrew his answer and dismissed his counterclaim with prejudice.

The trial court, in entering judgment for the plaintiffs, specifically found a number of facts heretofore stated, and in addition found that the plaintiffs "have had the actual, open and notorious, exclusive and continuous possession of the real estate described in plaintiffs' first amended petition under claim of ownership for more than ten years prior to the filing of this action and therefore they are also the owners of said real estate by virtue of Section 516.-010 of the Revised Statutes of Missouri."

On this appeal appellant Norman Baumgarth (hereinafter referred to as defendant) contends (1) that since the condition requiring payment of $3,000 was not com-

plied with no title passed to the grantees, and (2) that plaintiffs did not acquire title by adverse possession.

Plaintiffs in their brief make the contrary contentions (1) that the provision for payment of the $3,000 is considered an equitable charge on the land which is barred by limitation, and (2) that they proved title by adverse possession.

We will not determine the legal effect of the deed because we have concluded that the trial court ruled correctly in finding that plaintiffs had acquired title by adverse possession. That finding is supported by substantial evidence and is not clearly erroneous.

■ Defendant asserts that since no title passed by the deed John was simply a tenant in common with other heirs and that his possession was their possession and did not ripen into title by adverse possession. In support of that contention he cites a number of cases, including Warfield v. Lindell, 30 Mo. 272; Coberly v. Coberly, 189 Mo. 1, 87 S.W. 957, and Seibert v. Hope, 221 Mo. 630, 120 S.W. 770. We recognize the rule, as stated in Seibert, that "[B]y presumption of law the possession of one tenant in common is the possession of his co-tenants, and it is the settled law of this state that, to establish title in one co-tenant as against the others by adverse possession, there must be such outward acts of exclusive ownership of an unequivocal character as to impart notice to the co-tenants that an adverse possession is intended to be asserted against them." 120 S.W. 1. c. 771. However, we think that rule is usually applicable in the cases where it is recognized that the party going into possession is actually a tenant in common. We do not think the rule is strictly applicable in this case. Here, John went into possession under a deed which purported to convey the whole title and it, at the least, constituted color of title. As stated in 3 Am.Jur.2d, Adverse Possession, § 177, p. 268, "if one enters under color of title, claiming the whole for himself, and

other necessary conditions of adverse ownership concur, his possession will be adverse to his cotenant." See also Elder v. McClaskey, 6 Cir., 70 F. 529, and McCann v. Welch, 106 Wis. 142, 81 N.W. 996.

■ However, it is our view that, in any event, the evidence was sufficient to support a finding that plaintiffs acquired title by adverse possession. We will not repeat the evidence heretofore stated. We mention, however, that John asserted complete ownership and control of the farm for about 35 years. No one ever questioned his ownership or right to possession. He made a number of conveyances which indicated that he was claiming to own the farm. These were recorded and were constructive notice to possible cotenants. Also, it is significant that defendant and his father visited the farm only three times in a period of more than eleven years before this suit was filed and never made any claim concerning it. We are supported in our ruling by Replogle v. Replogle, Mo.Sup., 350 S.W.2d 735; Hunter v. Hunter, 361 Mo. 799, 237 S.W.2d 100, 24 A.L.R.2d 611; Mann v. Mann, 353 Mo. 619, 183 S.W.2d 557, and Anno. 82 A.L.R. 2d, § 37, p. 132.

In considering the questions here involved we have assumed that John's adverse possession started on January 16, 1945, one year after the death of Anna Stahlmann. Even so, there still remained more than 20 years of possession which we have ruled was adverse. We may add that we do not consider the friendly weekend visits of the Baumgarths an indication of any claim of title or right of possession. Nor do we consider it significant that Phillip, a carpenter, helped John build a corncrib and machine shed on the farm prior to Anna's death.

For the reasons indicated, the judgment is affirmed.

HENLEY, P. J., and STORCKMAN, J., concur.

SEILER, J., not sitting.