**J. E. "Everett" CASH, Plaintiff-Respondent,**

**v.**

**Omar GILBREATH et al., Defendants-Appellants,**

**Edna Tetrick et al., Defendants.**

**No. 9415.**

Missouri Court of Appeals, Springfield District.

March 27, 1974.

Harold L. Henry, West Plains, for plaintiff-respondent.

James E. Curry, Ava, for defendants-appellants.

JAMES H. KEET, Jr., Special Judge.

Quiet title action by Everett Cash, who, age 83 at time of trial, claims to own by adverse possession, an Ozark County farm of approximately 195 acres, homesteaded by his father, W. M. (William) Cash, who died in 1940, survived by plaintiff and five other children. Two of the children were deceased at time of trial, one of these being Albert, who died a widower at age 77 in 1970, leaving one child, defendant Bernice Hollingshad, as his only heir; the other being a sister of plaintiff, who left three children as heirs, among them Omar Gilbreath. Only Bernice and Omar and their spouses resisted plaintiff's action to quiet the title. They filed a counterclaim for partition. The other heirs of William, though joined as defendants, have not contested Everett's suit.

The trial court, after trial without jury, adjudged that Everett had acquired title by adverse possession for more than 31 years. Omar and Bernice appeal from this judgment. The appeal having been filed March 31, 1972, this court has jurisdiction. Mo.Const. Art. V, § 3, V.A.M.S. We review pursuant to Rule 73.01(d), V.A.M.R. Higgerson v. Higgerson, 494 S.W.2d 374, 377 (Mo.App.1973). The evidence is sufficient to show the facts we sketch herein.

■ In 1938 plaintiff's brothers and sisters, at the suggestion of Albert and his wife that they "give" the property (known as the "home place") to plaintiff, quitclaimed their interests to plaintiff by a deed, which referred to them as "heirs of W. M. Cash." They did this because they felt plaintiff deserved it for having stayed at the home place and taken care of his parents there and because the others had their homes. They remained a close family, all residing in the same general community (around Dora, Missouri). The deed, having been executed prior to William's death, was not effective to convey legal title to plaintiff. Shortly after the deed, plaintiff, who never married, occupied the property and paid for taking care of William until he died in 1940 and then paid his funeral expenses. He had paid expenses for taking care of his mother who had died about 1937, prior to the deed, and had paid her funeral expense.[1]

1. Appellants urged below and here insist that the trial court erred in the admission of evidence of plaintiff taking care of his father and mother and paying the expenses thereof.

After William died, plaintiff stayed on the property for two or three years and then moved in with Albert on his place (which "cornered" the homestead) and lived at Albert's until Albert died. Each helped the other on their separately-owned properties. Plaintiff and Albert owned other land as tenants in common and farmed it together. Each worked on the other's place. Albert owned land individually. Each had a separate bank account. They paid certain joint farm and living expenses out of a joint account. They farmed as partners and sold some timber, but not off the home place. In the last ten years they gave somebody half to harvest hay. By then they were disabled to the point they could no longer work. But as to the farm in question, plaintiff down through the years farmed it until too old to do so, paid the taxes,[2] rented parts of it for pasture (to a nephew and another relative) and kept the proceeds; kept the buildings insured in his name (until about 1971 when it became uninsurable because of lack of occupancy), made repairs (including those necessary after two windstorms),[3] and claimed it as his own. No one else occupied any of the property or paid any of the expenses or made any claim to the farm or the rents or profits until 1971, when plaintiff offered it for sale at public auction in his name, because, as Bernice testified, he "could give a good abstract." No one questioned this. Bernice's son, Joe, was the highest bidder. When a loan was sought to finance the purchase, the title, upon examination, was found not marketable. This suit resulted.

■ On this appeal plaintiff relies on adverse possession under §§ 516.010 and 516.070 RSMo 1969, V.A.M.S. (the 10-year and 31-year statutes of limitations), both of which he is allowed to plead. Kinsolv-

ing v. W. D. Lasswell Lumber Co., 318 Mo. 408, 416, 300 S.W. 506, 508–509[2] (1927). His proof was sufficient, under each statute, to sustain his burden of proving [Wykle v. Colombo, 457 S.W.2d 695, 700[5] (Mo.1970)] that his possession was hostile and under claim of right, actual, open and notorious, exclusive, and continuous and that such elements existed concurrently until the commencement of this action.

■ Appellants urge that since plaintiff's possession was not adverse as against his cotenants, he did not acquire title by limitation. The general rule is that the possessor presumptively holds possession for his cotenants. We recognized in *Higgerson* that a tenant in common can acquire title by adverse possession against his cotenants, but that strong proof is required to overcome the presumption that the claimant holds possession for his cotenants. We are persuaded that plaintiff sustained this burden.

■ Under certain circumstances, the possessor may hold adversely to his cotenants and after adverse possession for the statutory period invoke the statute to defeat the claims of the cotenants. This is so where, as here, he occupies the common property notoriously as the sole owner, using it exclusively, improving it and taking to his own use the rights and profits, or otherwise exercising over it such acts of ownership as manifest unequivocally an intention to possess the property as his own and exclude others from control and to ignore and repudiate any right in his cotenants. The possessor need not intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. Hedgpeth v. Maddux, 366 S.W.2d 314, 316 (Mo.1963); Gates v.

We reject this contention. Such evidence was relevant, along with other evidence, to show that plaintiff claimed possession of the property as his own and that others in the family recognized or should have known this.

2. The direct and circumstantial evidence, very extensive on this, suffices to warrant such a finding. Cf. Laclede Land & Im-

provement Co. v. Epright, 265 Mo. 210, 217, 177 S.W. 386, 388 (1915); Bevier v. Graves, 213 S.W. 74, 76 (Mo.1919) (cases to the effect that payment of taxes may be shown by circumstantial evidence).

3. Bernice's husband helped after one windstorm, when Everett and Albert were getting older and would not climb on the roof.

Roberts, 350 S.W.2d 729, 732 (Mo.1961). No positive notice need be given to the co-tenants. The possessor is not required to prove a probable actual knowledge on the part of his cotenants. It is sufficient that the act itself, as here, is overt and notorious. This is especially true where, as here, the land is openly known as the possessor's land and the true owners live in the neighborhood and see and know of the condition of affairs. Allen v. Morris, 244 Mo. 357, 364, 148 S.W. 905, 907 (1912); Plaster v. Grabeel, 160 Mo. 669, 61 S.W. 589 (1901) (even where possessor moved from subject property into a house within 25 to 30 feet of it). If the cotenant is ignorant of his rights or neglects them he must bear the consequences. Misenheimer v. Amos, 221 Mo. 362, 371, 120 S.W. 602, 604 (1909); Replogle v. Replogle, 350 S.W.2d 735, 738 (Mo.1961). It is significant that only Omar and Bernice asserted any claim. Allen, supra, 244 Mo. at 365, 148 S.W. at 907; Wunderlich v. Baumgarth, 437 S.W.2d 78, 81 (Mo.1969); Feinstein v. McGuire, 297 S.W.2d 513, 517 (Mo.1957).

 It is inferable that all of the defendants knew of the quitclaim deed made in 1938. The execution and later recording of the deed (in 1957) under such circumstances constituted an ouster. Cf. Burnett v. Hartung, 497 S.W.2d 653, 654 (Mo.App.1973). The quitclaim deed provided color of title, at least from the time it was recorded in 1957. Moran v. Roaring River Development Company, 461 S.W.2d 822, 829–831 (Mo.1970) (three quitclaim deeds); Plaster, supra (void warranty deed). Plaintiff's acquiring a collector's deed in 1947 indicated a possession that was hostile to the other cotenants and fortified his right.[4] His doing so was not an admission, nor did it weaken the force or effect of his possession. The tax sale deed constituted color of title, even though, as urged in appellants' brief and recognized in respondent's brief, it was void. Fein-

stein, supra, 297 S.W.2d at 517. The recording of the quitclaim deed and the collector's deed gave the defendants notice by record as to the nature and extent of plaintiff's claim. Moran, supra, 461 S.W. 2d at 831; Plaster, supra, 61 S.W. at 590. When adverse possession is once shown, as here, it will be presumed, in the absence of evidence to the contrary, to have continued in the possessor. Less weight is required to support an adverse entry by one with color of title than a bare entry by an intruder under no claim of right. Feinstein, supra, 297 S.W.2d at 517.

The judgment in the trial court was not, under the evidence and law, clearly erroneous. It is affirmed.

HOGAN, C. J., and STONE, TITUS, and BILLINGS, JJ., concur.

<hr/>

the property, receiving certificates of purchase on each sale. On May 19, 1947, plaintiff received the collector's deed covering both parts of the property and recorded it the same day.

4. Taxes for 1942 and 1943 were returned delinquent and on November 6, 1944, plaintiff bought in 40 acres of the property and on November 8, 1944, bought in the balance of