**Melvin RECTOR, et al., Plaintiffs-Respondents,**

v.

**MISSOURI DEPARTMENT OF NATURAL RESOURCES, et al., Defendants-Appellants.**

**No. 48239.**

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 18, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 22, 1985.

Application to Transfer Denied Feb. 26, 1985.

Louren R. Wood, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

Robert J. Blackwell, St. Louis, for plaintiffs-respondents.

CRANDALL, Judge.

Defendant, Missouri Department of Natural Resources (DNR), appeals from a judgment in an action for declaration of title and for partition of approximately 115 acres of land in Ste. Genevieve County in the vicinity of Hawn State Park. The DNR appeals from the part of the judgment which declares 38 acres to be subject to a one-half interest in the DNR, and a second one-half interest, divided among various parties, and also appeals from an order of sale of the property.

The DNR argues on appeal that the trial court acted against the weight of the evidence and misapplied the law in (1) concluding DNR had not acquired absolute title through adverse possession, and (2) in concluding plaintiffs were not barred by limitations or laches from bringing this action. The DNR also claims error in the court's refusal to appoint partition commissioners to determine if partition in kind was practicable rather than ordering a partition sale. We affirm.

This action for declaration of title involved four tracts of land, but we need only be concerned with Tract No. 3, described as follows:

All of the Southeast Quarter of the Southeast Quarter of Section 10, Township 36 North, Range 7 East except a 2-acre tract conveyed by instrument recorded in Book 71 at Page 275, all in Ste. Genevieve County, Mo.

The trial court found that the common source of title to Tract No. 3, which consisted of 38 acres, as well as other tracts involved in this cause of action, was John and Artemesia Rector; and that this tract of land was sold for delinquent taxes in 1937 and was redeemed on October 31, 1939, by surviving Rector children in the following proportions:

| | |
|---|---|
| Owen Rector | ½ |
| Tilda Rector | ¼ |
| Viola Rector Ramsey | ¼ |

By warranty deed of November 27, 1954, recorded December 4, 1954, the children of Owen Rector conveyed their half interest in the 38 acres along with other land to A.J. Butterfield. Butterfield purported to convey an entire interest in the land to the Missouri State Park Board (predecessor of DNR) by a deed recorded in 1956. The DNR does not assert that the title from Butterfield conveys more than the one-half interest.

Defendant DNR asserts a present ownership of an undivided one-half interest in the 38 acres based on good record title and absolute ownership in fee of the 38 acres based upon adverse possession of the property from 1956 to present.

The Rector family members stipulated that (1) plaintiffs, the six living children of Tilda Rector, hold a one-third interest in the disputed property; (2) four living chil-

dren of Elmer Rector, deceased son of Tilda, collectively hold one-third; and (3) defendant Mary Vallo Pitts holds a one-third interest through Sadie Rector, and that all these interests are subject to any interest which the DNR might have.

The DNR presented two witnesses to support its claim of adverse possession. George Hosack testified he had been superintendent of Hawn State Park in 1965 and 1966 and had not been assigned there since 1966. He testified that the winter before he arrived markings on trees (blazes), indicating the boundary of the park, had been freshened with blue marks and some brush was cleared on the boundary. He stated that he helped conduct a survey for roads in the park, and that crews cleared a roadway. Hosack also testified about a trail network being established, but the evidence is not clear if any trails were on the land in dispute here. He knew of no other development of this disputed area and knew of no fencing or other boundary markers other than those already mentioned.

The DNR's other witness was Robert Bonnell, who began working at the park in 1979, the year this action was filed. He testified that blue "No Hunting" signs marked part of the alleged boundary of the park. He did not state how long the signs had been there. He stated there was not enough manpower to make sure hunters stayed off the property. He testified the only development in the disputed area was "the pavement." Bonnell further testified there was an entrance sign for the park at the western edge of the disputed property but did not state how long the sign had been there.

Plaintiffs' witness Melvin Rector testified he was raised on the property and now used the disputed area for hunting more than once a year. Other family members hunted there as well. He said family members also rode horses there. He testified he had not seen any blazes or blue marks on the property. He testified that in 1971 or 1972 he saw evidence of a road being built on the disputed property, and this

statement came in the context of questioning regarding when he first saw evidence of the state park being developed.

■ It is not disputed that the public (the state DNR here) can acquire title to real property by adverse possession, just as an individual can. *Szombathy v. City of Berkeley*, 280 S.W.2d 834, 836 (Mo.1955).

■ Those claiming title by adverse possession have the burden of proving each element necessary to establish title. *Lacy v. Schmitz*, 639 S.W.2d 96, 99 (Mo.App. 1982). These elements are: "(1) the possession must be hostile and under claim of right; (2) possession must be actual; (3) possession must be open and notorious; (4) possession must be exclusive; and (5) possession must be continuous for the requisite period." *Id.* at 99. The period required is ten years. § 516.010, RSMo (1978).

The trial court in effect found that the DNR and the heirs owned this property as tenants in common. Specific rules of law apply to adverse possession cases involving cotenants. In *Wunderlich v. Baumgarth*, 437 S.W.2d 78 (Mo.1969), the Missouri Supreme Court set out the rule citing *Seibert v. Hope*, 221 Mo. 630, 120 S.W. 770, 771 (1909);

'[B]y presumption of law the possession of one tenant in common is the possession of his co-tenants, and it is the settled law of this state that, to establish title in one cotenant as against the others by adverse possession, there must be such outward acts of exclusive ownership of an unequivocal character as to impart notice to the co-tenants that an adverse possession is intended to be asserted against them.'

But the *Wunderlich* opinion noted an exception to this rule which is applicable to the present case:

However, we think that rule is usually applicable in the cases where it is recognized that the party going into possession is actually a tenant in common. We do not think the rule is strictly applicable in this case. Here, John went into pos-

session under a deed which purported to convey the whole title and it, at the least, constituted color of title. *Wunderlich,* 437 S.W.2d at 81. The court then quoted 3 Am.Jur.2d, Adverse Possession, § 177, p. 268 (1962) which states, "if one enters under color of title, claiming the whole for himself, and other necessary conditions of adverse ownership concur, his possession will be adverse to his cotenant."

■ The DNR here had color of title for an absolute interest in the tract. Based on *Wunderlich,* we will analyze the facts under normal adverse possession rules.

The trial court found that the fifth element of adverse possession, that of continuous possession, was the one "most lacking" in this case. The court stated the record was devoid of any evidence as to the activity and efforts of the DNR for a continuous ten-year period. The court held that there was no indication as to whether the boundary line to which Hosack testified was maintained in any fashion to keep the brush cleared or blazes visible. The fact the boundary may have been marked for a period of time more than ten years before the filing of this action, the court noted, was not sufficient. No evidence was presented by the DNR regarding its use of the land from 1966 to 1979.

Defendant argues, citing *City of South Greenfield v. Cagle,* 591 S.W.2d 156, 159 (Mo.App.1979), that "[w]hen adverse possession is once shown, it will be presumed, in absence of evidence to the contrary, to have continued in the possessor." This presumption is based upon *McDaniels v. Cutburth,* 270 S.W. 353, 359 (Mo.1925): "A general rule of presumptions is that, where the existence at one time of a certain condition or state of things of a *continuing* nature is shown, the presumption arises that such condition or state continues to exist until the contrary is shown." (Emphasis added.)

In the present case, there was no showing of any continuing possession. Even if the limited activity of marking boundaries and clearing roads could be found to constitute possession, there is no evidence that the projects done in 1965 and 1966 were ever maintained. There was no evidence by the DNR of anyone using the land as a park area. The only activities testified to by the DNR's witnesses were of short duration and were projects that were not continuous, but rather were projects that ended when the jobs were completed. There was no evidence that the DNR patrolled this land.

We also note *Feinstein v. McGuire,* 297 S.W.2d 513, 517 (Mo.1957) where this qualification to the *Cutburth* rule is stated: "However, this presumption should only be allowed where evidence cannot reasonably be obtained as to the true facts and should never be applied where ... the party who would benefit therefrom, knows or has evidence of the actual fact."

In the present case, it is not clear, but could be presumed, the DNR knew what activities took place on the disputed land from 1966 to 1979. Thus, the DNR should not be able to rely on the presumption stated in *Cagle.*

■ Furthermore, the possession which must be continuous involves two concepts: "They are ... present ability to control the land and ... intent to exclude others from such control." *Teson v. Vasquez,* 561 S.W.2d 119, 126 (Mo.App.1977). Defendant provided no evidence to show any ability to control this land. This land can be likened to property valuable only for timber, and "the protection thereof against trespassers, looking after the land and making roads, while acts denoting claim of ownership, do not themselves constitute adverse possession." *Hamburg Realty Co. v. Woods,* 327 S.W.2d 138, 154 (Mo.1959). Defendant here did not have sufficient control to keep Melvin Rector and others from using the property. The marking off of a boundary also is not sufficient to constitute proof of possession, even if the marking off is by fencing, which was not the case here. *Franklin v. House,* 533 S.W.2d 243, 245 (Mo.App.1976); *see also Conran v. Girvin,* 341 S.W.2d 75 (Mo.1960).

Defendant also argues that the trial court failed to take into account the rule regarding color of title: "Less weight is required to support an adverse entry by one with color of title than a bare entry by an intruder under no claim of right." *Cash v. Gilbreath*, 507 S.W.2d 931, 935 (Mo.App. 1974). We find the DNR's proof does not even meet this lower standard.

■ Although the trial court discussed how other elements of adverse possession were not established by the DNR, we need not address those elements, since the failure to prove any element was sufficient to support the court's finding. The DNR failed to prove any continuous possession.

Defendant DNR asserts as a separate point that plaintiffs are barred by the statute of limitations, § 516.010, RSMo (1978), or by laches, from bringing this action. The statute provides:

No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person, whether citizen, denizen, alien, resident or nonresident of this state, unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action.

Defendant cites *Hooks v. Spies*, 583 S.W.2d 569 (Mo.App.1979) for support of its claim on this point, by arguing the plaintiffs here did not have possession of the property because hunting was the only activity carried out on the land. Dispositive on this issue is this statement from *Hooks:* "However, where land is vacant or unoccupied by any person the constructive possession is held to have been with the owner of title.... The owner of record title is presumed to have possession in the absence of evidence showing otherwise." *Hooks*, 583 S.W.2d at 572–573.

■ In the present case, the court in effect found both DNR and plaintiffs were owners of record title as cotenants. Both are presumed to have possession in the absence of evidence to the contrary. There was insufficient activity by DNR to prove it was in any better possession of the land than plaintiffs. Defendant's second point is denied.

Defendant's third point claims error in the trial court's failure to appoint partition commissioners to determine if partition in kind of the property was practicable rather than ordering a partition sale as the court did by its authority under Rule 96.11.

■ "The test of whether a partition in kind would result in great prejudice to the owners is whether the value of the share of each in case of a partition would be materially less than his share of the money equivalent that could probably be obtained for the whole." *Gebauer v. Gebauer*, 165 S.W.2d 333, 335 (Mo.App.1942). The trial judge's conclusions are entitled to great weight if there is substantial evidence to support them. *Id.*

■ In the present case, the court found 14 individuals had an interest in the 38 acres, along with the interest of the DNR. The DNR interest was the largest, being one-half. The other half would be divided among the 14 parties.

It was within the discretion of the judge to find that the shares of the 14 heirs might be worth less taken in a partition in kind, than if the total tract were sold. In addition, there was a road through this land, complicating any possible partition in kind. Defendant's third point is denied.

The judgment is affirmed.

DOWD, P.J., and CRIST, J., concur.