Teddy Edwin ALLEN,
Plaintiff-Respondent,

v.

Albert ALLEN, Defendant-Appellant,

and

Chelesta Coble and Mrs. Erbin Allen,
Defendants-Respondents,

and

Nay Allen, Intervenor-Appellant.

No. 13559.

Missouri Court of Appeals,
Southern District,
Division Two.

March 12, 1985.

James E. Curry, Ava, for plaintiff-respondent.

Richard T. Martin, Gainesville, for defendant-appellant.

Turner, Reid, Duncan, Loomer & Patton, Springfield, for appellants.

John M. Wiles, West Plains, for defendant-respondent Chelesta Coble.

J. Richard Owensby, Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, for defendant-respondent Mrs. Erbin Allen.

Wade & Haden, Ava, for intervenor-appellant.

MAUS, Judge.

In this action an interlocutory judgment in partition determined the interests of the parties and ordered a tract of real property sold. That judgment also denied the claim of defendant Albert Allen and intervenor Nay Allen that they had acquired full title by adverse possession. Those two parties appeal. § 512.020.

A very brief summary is an adequate factual basis for the disposition of the case. At the time of his death, the 141 acres of hill land was owned by J.D. Allen. He died intestate in June of 1942. He was survived

2. See *State v. Austin,* S.D. No. 13545, —— S.W.2d —— (Mo.App.1985), for disposition of co-defendant's appeal.

by his widow Euretta Allen. His lineal heirs were seven children and a grandchild, Teddy Edwin Allen. Teddy was the son of an eighth child who died in 1929. Defendant Albert Allen was one of the surviving sons. Intervenor Nay Allen is a son of Albert Allen. The widow, Euretta Allen, died July 5, 1965. No administration was had on the estate of J.D. Allen.

In 1957, Albert Allen started pasturing cattle on the property. When asked if his mother said he could use the property, Albert Allen answered, "Yeah. She just turned it over to me, taxes and everything. I had to pay them for her." He also testified that while riding in an automobile, about the time Euretta Allen died, the boys, meaning his surviving brothers, said he deserved the place and agreed to give it to him. At another place in his testimony, Albert Allen stated, "No, the boys all just let me use it. And I just kept on. I had to pay the taxes on—for it."

In 1980 and 1981, three surviving brothers and the children of a deceased sister conveyed their interests to Albert Allen. A surviving sister, Chelesta Coble, the grandson previously mentioned, Teddy Edwin Allen, and Mrs. Erbin Allen, the widow and devisee of a deceased brother, did not convey their interests. These three individuals are the respondents.

After about 1957 no one lived on the property. From 1957 to 1966 Albert Allen pastured cattle on the property. Since 1966, Albert Allen and Nay Allen his son, as partners, have so used the property and paid the taxes thereon. Albert Allen owns 300 acres on one side of the property. Nay Allen owns 170 acres on the other side of the property. The three tracts have been kept under one fence. The fences have been maintained by Albert Allen and Nay Allen. They have kept a lock on the entrance gate to the property. Except for hunting and cutting wood with the permission of Albert Allen or Nay Allen, no other use has been made of the property.

■ Appellants' first point is that the trial court erred in not declaring them to be sole owners of the property by reason of adverse possession. The appellants did not establish that title by showing they alone made use of the property for the statutory period. The burden was upon them to show that the character of their use, under the surrounding circumstances, met the complex and detailed requirements necessary to establish adverse possession within the meaning of that doctrine. *J.C. Nichols Co. v. Powell*, 641 S.W.2d 780 (Mo.App. 1982). Those requirements have received a myriad of expressions. Three are appropriate and decisive. "The possession must be (1) hostile, that is, under a claim of right, (2) actual, (3) open and notorious, (4) exclusive, and (5) continuous, for ten years prior to commencement of the action to perfect title by adverse possession." *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo.1974). A cotenant claiming adverse possession

> must show the actual knowledge of the real owner that he claims in opposition and defiance of his title, or he must show such an occupancy and user, so open and notorious and inconsistent with, as well as injurious to, the rights of the true owner, that the law will authorize, from such facts, the presumption of such knowledge by the true owner. It is not the mere occupancy or possession which must be known to the true owner to prejudice his rights, but its 'adverse' character.

*Miller v. Warner*, 433 S.W.2d 259, 262–263 (Mo.1968). "Permissive possession is not adverse possession and if possession in its inception is permissive, it so remains until the hostile claim is brought home to the true owner and thereafter continues for such time as will satisfy the statutory requirements in time." *Tallent v. Barrett*, 598 S.W.2d 602, 606 (Mo.App.1980).

The appellants principally rely upon two cases dealing with adverse possession by cotenants, *Cash v. Gilbreath*, 507 S.W.2d 931 (Mo.App.1974) and *Wunderlich v. Baumgarth*, 437 S.W.2d 78 (Mo.1969). These cases are readily distinguishable. In *Cash*, the claimant was not only in actual possession but adversely claimed under a recorded, but legally ineffective, deed and a recorded tax deed. In *Wunderlich*, the

decisive facts were 35 years actual possession with a claim of ownership under a conditional deed.

There was no evidence the respondents had actual notice the appellants claimed ownership adversely to them. Nor was there evidence tending to establish constructive notice of such a claim other than the appellants' use of the property. That use was permissive until the death of Euretta Allen. Albert Allen stated that during that period he recognized his mother owned the property. After the mother's death, in speaking of his sister, he recognized that she had an interest in the property. Nay Allen characterized his claim by referring to an agreement with his father that the land would "[j]ust be mine perhaps when—." Nay Allen testified that as far as he knew, he and his father were using the land with the cotenants' permission. Albert Allen said none of the cotenants objected to their use of the property and "I practically felt like I owned it."

Without an extended consideration of all of the requirements to establish adverse possession, the appellants' evidence does not establish "an unequivocal claim of ownership inimical to the rights of his cotenants which is so open and notorious as to manifest an intention to possess the property as his own and to exclude others from control and to ignore and repudiate any right in his cotenants." *Russell v. Russell*, 540 S.W.2d 626, 634 (Mo.App.1976). Compare *Tallent v. Barrett*, supra, a remarkably, factually similar case. The trial court's denial of the appellants' claim of ownership by adverse possession is supported by the evidence and is affirmed. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The appellants' second point is that the trial court erred in not awarding them judgment for proportionate contribution for taxes from 1965 to 1980 which they paid in the total amount of $925.92. They rely upon *Hartog v. Siegler*, 615 S.W.2d 632 (Mo.App.1981). The applicable general rule has been succinctly expressed.

In this state it is settled that a cotenant, who has enjoyed the occupancy of the premises, who seeks and is to be granted an allowance for improvements made thereon subjects himself to the crediting of his out-of-possession cotenant with the reasonable value of the premises he occupied, and, in partition *equity may set off that rental value* against the improvements, taxes, and other charges paid by the tenant in exclusive possession although he has not ousted his cotenant. *Goforth v. Ellis*, supra, [300 S.W.2d 379] 300 S.W.2d loc. cit. 379(6); *Byrne v. Byrne*, 289 Mo. 109, 233 S.W. 461; *Martin v. Martin*, 218 Mo. App. 617, 266 S.W. 336; Annotation, Cotenants—Rents and Profits—Use, 51 A.L.R.2d 394, 459, Sec. 20; 14 Am.Jur., Cotenancy, Sec. 43, p. 30, 1960 Pocket Supplement.

*Beckham v. Eggleston*, 341 S.W.2d 337, 340 (Mo.App.1960) (emphasis added). In this case, there was evidence from which the trial court could reasonably conclude the rental value of the property for the 15 years in question exceeded $925.92. The trial court did not err in denying the appellants' claim for contribution. The judgment is affirmed.

PREWITT, C.J., HOGAN, P.J., and CROW, J., concur.